DEAN *et al. v.* BRANNON.[*]

(Division B.    May 11, 1925.)

[104 So. 175.    No. 24949.]

1. CORPORATIONS. *Foreign corporation "found" in county where it has agent subject to process and place of business.*

Within Code 1906, section 707 (Hemingway's Code, section 486), authorizing action to be brought in county in which any one of defendants may be "found," a foreign corporation is found in a county in which it has an agent subject to process and a place of business.

2. APPEAL AND ERROR. *On refusal to direct verdict, every fact favorable to appellee considered proved, if established directly or by reasonable inference.*

In determining whether appellants were entitled to directed verdict, every fact favorable to appellee which evidence established either directly or by reasonable inference must be considered as proved.

3. SHERIFFS AND CONSTABLES. *Sheriff and bond liable for acts of de facto deputies.*

Sheriff and his bond are liable for acts of *de facto* deputies, acting under summons of him, and his chief deputy or undersheriff, as much as though they had been regularly appointed in writing, as provided by Code 1906, section 4664 (Hemingway's Code, section 3081); the statutes not being the source of all his powers.

4. SHERIFFS AND CONSTABLES. *Sheriff and bond liable for acts of deputies who, acting within general scope of authority, exceeded authority.*

Sheriff and his bond are liable for acts of deputies, who, being directed to take necessary steps to hold up and search the truck of certain persons expected to appear with a load of liquor, and make arrests which search might call for, mistook another truck for that expected, and fired on its occupants on an order to halt not being promptly obeyed, as they, while exceeding their authority, were acting within the general scope thereof.

*Headnotes 1.  Corporations, 14a C. J., Section 4121; On jurisdiction of state court over foreign corporation, see note in 70 L. R. A. 691; 12 R. C. L. 108; 2 R. C. L. Supp. 1393, 4 R. C. L. Supp. 747; 2. Appeal and Error, 4 C. J., Section 2709; On liability of sheriffs or other officers for acts and omissions of their deputies while acting officially or under color of the office, see note in 1 A. L. R. 236; 12 A. L. R. 981; 24 R. C. L., pp. 981, 982; 3 R. C. L. Supp., p. 1391; 4 R. C. L. Supp. 1562; 5 R. C. L. Supp., p. 1302; 3.  Sheriffs, 35 Cyc., p. 1906.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

Action by Mrs. Edna Brannon against A. E. Dean and another.  Judgment for plaintiff, and defendants appeal. Affirmed.

*Stevens & Heidelberg*, for appellants.

## I.

There were two defendants, one a resident householder of George county, Mississippi, and the other defendant being a foreign corporation without residence or domicile in the state of Mississippi.  The statute fixing venue of actions of this kind is section 486, Hemingway's Code, section 707, Code of 1906.

It was the contention of the plaintiff in the lower court, and the lower court so held that in view of the fact that the defendant United States Fidelity & Guaranty Company was subject to suit wherever any of its agents might be found in the state of Mississippi, and the fact that an agent was found in Forrest county where the suit

was filed, was not only sufficient to confer jurisdiction upon the circuit court of Forrest county, but was sufficient to prevent a change of venue on the application of the codefendant who was a resident of the state and who had a household and residence in George county.

We have been unable to find any decision from the supreme court of Mississippi directly in point. It seems to us, however, that the statute itself is plain and explicit in its terms. It says that if any defendant who is a resident citizen of this state is sued out of the county of his household and residence, the venue of the action on his application shall be changed to the county of his household and residence. There is no exception in the statute. There is no provision of law anywhere in Mississippi providing that if a defendant who is a resident citizen of the state be joined with a foreign corporation or a nonresident of the state, that he shall not be entitled to remove the venue of the cause to the county of his residence on his application, and so far as we have been able to find there is no decision in Mississippi so holding.

In the case at bar, the United States Fidelity & Guaranty Company, the foreign corporation was not domiciled in Forrest county at all. It was not domiciled in the state of Mississippi. It was in law a citizen of the state of Maryland. Therefore, this suit was filed and proceeded to judgment in a county where neither of the defendants was domiciled or resided. In this case, although the defendant Dean was a resident householder of George county and although he was sued in a county where neither he nor the codefendant was domiciled or resided, his application for a change of venue to the county of his residence and domicile was overruled, in utter violation of the statute quoted.

While there has been no decision by this court deciding the exact point at issue, there have been decisions of other states which throw considerable light on the question involved in this assignment of error. *Barfield v. Southern Cotton Oil Co. et al.* (S. C.), 69 S. E. 603; *J. D. Hudgins & Brother v. Low et al.,* (Tex.), 94 So. 411;

*Fort Orange Paper Co.* v. *Risden et al.* (N. J.), 41 Atl. 706; *Ludington Exploration Co. et al.* v. *La Fortuna Gold & Silver Mining Co. et al.* (Calif.), 88 Pac. 290.

We, therefore, submit that this case should be reversed and remanded with direction that the venue be changed to the circuit court of George county.

## II.

REFUSAL OF THE COURT TO GRANT A PEREMPTORY INSTRUCTION ERROR. The uncontradicted evidence shows that Goff was neither a regular nor a special deputy sheriff, and therefore, neither the sheriff nor the surety on his bond was liable for his act in shooting the plaintiff. Even if the deputy sheriff had attempted to appoint Goff, his attempt to do so would have been utterly null and void under the holding of this court in *Welch* v. *Jamison,* 1 Howard 160, where it is held that the power to appoint a deputy sheriff is vested solely in the sheriff himself.

The uncontradicted evidence in this case shows that the sheriff Dean knew nothing about the proposed mission of Goff. Goff is the man who swore out the affidavit for the search warrant. Goff is the man to whom the search warrant was delivered, and Goff is the man who attempted to execute the search warrant, whether rightfully or wrongfully. The sheriff did not know that the affidavit for the search warrant had been made. He did not know that the search warrant had been issued. The search warrant had never been delivered to the sheriff or to his deputy, and, therefore, the sheriff cannot be held responsible for the act of Goff while attempting unlawfully to execute this search warrant.

The testimony does not establish even as against Dean himself, the fact that he appointed Goff as his deputy so that he would be responsible for the act of Goff. Much less would it be evidence as against the defendant Surety Company. The surety company did not appoint him; the surety company was not present when this so-called admission was made, and the surety company is not bound by the admission of the codefendant. So that this testi-

mony, even if competent and of any probative value at all as against the defendant Dean, was not only not competent as against the defendant surety company but even when testified to, it established no fact as against the surety company.

This suit was for the breach of a contract. It was a suit on the official bond of the sheriff for a breach of the condition of that bond. It must be borne in mind that the rights and liabilities of the defendant, United States Fidelity & Guaranty Company, as surety on this bond, are rights and liabilities which grow out of a contract entered into by it, for a breach of which contract this suit is brought. The surety company assumed no responsibility for the conduct of the sheriff except such responsibility as is based upon and grows out of the contract signed by it. Let us, therefore, see for a moment what the surety company contracted to do when it promised to pay the state of Mississippi the four thousand dollars referred to in the bond. It contracted to guarantee the faithful performance of the duties of Dean as sheriff of George county. The statute requiring the sheriff to give a bond is section 3079, Hemingway's Code, section 4662, Code of 1906. The statute authorizing a suit on the sheriff's bond is section 3080, Hemingway's Code section 4663, Code of 1906.

If we concede for the sake of argument that the surety on the sheriff's bond could in any event be liable for the act of the deputy sheriff, then the question arises, what deputy sheriff, and how many deputy sheriffs? When the contract in question, the bond, was executed, the parties contracted with reference to what the law then provided for with reference to the appointment of deputies. Section 3081, Hemingway's Code section 4664, Code of 1906, provided the method by which deputies could be appointed by a sheriff. There are two kinds of deputies; one known as a regular deputy and the other as a special deputy. Regular deputies can only be appointed in writing, and before one enters upon the duties of the office, he must take and subscribe an oath, and the appoint-

ment with the certificate of the oath shall be filed and preserved in the office of the clerk of the board of supervisors. Section 3081, Hemingway's Code. Special deputies are those appointed to do a particular act only, as for instance the serving of a summons. In this event, the appointment to execute the particular process must likewise be in writing on the process. Section 3082, of Hemingway's Code, section 4665, Code of 1906, gives to the sheriff the same remedy and judgment against deputy sheriffs and the sureties upon the deputy sheriff's bonds as a creditor or other person has against the sheriff himself.

Under the provisions of chapter 122 of the Laws of 1920, the sheriff here had authority to appoint only one regular deputy. Therefore, if the surety contracted to be liable at all for the acts of a deputy sheriff when it signed the bond of A. E. Dean as sheriff of George county it contracted to be liable for the acts of only one deputy sheriff because the sheriff had authority to appoint only one deputy sheriff under the law. We, therefore, submit that in no event could there have been any recovery as against the surety on the bond because of the act of Goff even if there was a written appointment of him as deputy sheriff.

There is a reason for the position taken by us here, and a sound one. The statute provides that the sheriff shall have the same cause of action against the deputy sheriff and the surety on the deputy's bond, that others have against him. We have another statute which provides that in an action against a principal and a surety where judgment is recovered and the judgment paid by the surety, the surety becomes subrogated to the rights of the principal. So that when the surety company in this case signed its contract, even if it contracted to be liable for the acts of a deputy, it contracted knowing that if the deputy himself caused a breach of the sheriff's bond and suit was brought against the sheriff and judgment obtained against the sheriff and the judgment paid by the surety company, it would in turn be subrogated to

the rights of the sheriff and could proceed against the deputy and the surety on the deputy's bond.

*Chandler* v. *Rutherford,* C. C. A. 8th Circuit, 101 Fed. 774, held that when a deputy United States Marshal assumed to act without warrant his act was not under color of office such as to make sureties liable. *Brown* v. *Wallace* (Tex.), 12 L. R. A. (N. S.) 1019, held that a sheriff is not liable for the act of a deputy who shoots another while attempting to escape when the deputy was attempting to make an unlawful search; that this was not done under color of office.

Section 3081, Hemingway's Code, provides for the appointment of deputies, and provides that the sheriffs shall be liable for the acts of their deputies. Section 3082 of Hemingway's Code, provides for a remedy in favor of the sheriff alone against the deputies and the sureties on the deputies' bond. The only intimation anywhere in the statutes that a sheriff's bondsman can be liable for the act of a sheriff's deputy, is contained in section 3083 of Hemingway's Code, which provides that whenever any fine, penalty or judgment shall be assessed or rendered against a sheriff or his sureties for or on account of any misconduct of a deputy, that upon motion by the sheriff or the sheriff's sureties the court shall give judgment against the deputy and the deputy's sureties jointly and severally for the full amount of all such fines, penalties or judgments.

We have stated heretofore that the liability of the sureties on a sheriff's bond is a liability that grows out of and is fixed by contract. It cannot be enlarged upon. *Furlong et al.* v. *State,* 58 Miss. 717; *Brown* v. *Mosely,* 11 Smedes & M. 354.

In the case at bar, admittedly Goff was not a regular deputy. Our contention is that he was no deputy at all, and neither the sheriff nor the sureties on his bond was liable for his act, but even if the plaintiff's contention is correct, he was not such a deputy as was required by law to give a bond, and, therefore, section 3083, the only section, as above stated, which in any wise, by implica-

tion or otherwise, makes the sureties upon the sheriff's bond responsible for the act of a deputy, does not contemplate such a deputy as the plaintiff claims Goff was on this occasion.

*Paul B. Johnson* and *R. L. Bullard,* for appellee.

## I.

Both defendants, by virtue of the statute, were properly sued in a county where either of them was found, not domiciled, as counsel for appellants contend. *Indianola Cotton Oil Company* v. *Crowley,* 83 So. 409; Section 707, Code 1906.

The suit may be instituted in any county where a defendant may be found. If a citizen of another state be here doing business and is here sued jointly with a citizen of another county in this state it will hardly be contended that the resident citizen could remove the suit. If, therefore, the right to remove the suit, conferred by the last clause of this statute, is not absolute but is subject to exception, the exception is found in the first section and is where one of the joint defendants is found and served with process in the county. It will not be contended that the suit was not lawfully commenced in Forrest county, and the service on Dean good.

In support of the proposition that the case, the venue, cannot be changed on the application of one of the defendants, the following are cited in note 47, page 146 in 40 Cyc: *Klein* v. *German Nat. Bank,* 69 Ark. 140; *McKenzie* v. *Barling,* 101 Cal. 459; *Puper* v. *Centimela Land Co.,* 56 Cal. 173; *Eddleman* v. *Traction Co.,* 217 Ill. 409; *Whataker* v. *Reynolds,* 14 Bush (Ky.) 616; *Diamond State Tel. Co.* v. *Blake,* 105 Md. 570; *Rupp* v. *Swineford,* 40 Wis. 28; *Baltimore Co.* v. *Union R. Co.,* 99 Md. 82 and twelve others.

## II.

PEREMPTORY INSTRUCTION PROPERLY REFUSED. By law, Ward, the undersheriff, was clothed with all the powers

and duties of the sheriff, and the sheriff was responsible for all his official acts. The evidence shows by the sheriff's admissions that he had specially sent Goff and Passon to assist in the search. This is disputed but the verdict finds the fact to be true. But if this were not true Ward had the same authority the sheriff had to make use of their assistance. There was no officer present but the sheriff in the person of his deputies, and it was their duty to execute the search warrant.

It was therefore the sheriff, in the person of his general deputy, who ordered them to stop and search the truck, and the sheriff was liable for what happened in obedience to that signal to the same extent as if he had given the signal himself.

Opposing counsel rely on the case of *Welch* v. *Jamison,* 1 Howard 160, to support their contention that the under sheriff could not specially direct Goff and Passon to do what they did. That case does not so hold. The deputy sheriff, in that case, had appointed Welch, the plaintiff in the case, to keep property taken in attachment "as the servant of said deputy sheriff."

One of the many things which by law is enjoined on the sheriff is to appoint such special deputies from time to time as may be necessary. This may sometimes be done orally and, since it is one of the general powers of the sheriff not limited by the section in question, it may be exercised by the general deputy or under sheriff. This must be true for otherwise, in the absence of the sheriff, however long continued, the duties of the officer could not be freely discharged.

The authority for the foregoing is abundant, and, so far as we have found, without conflict. *Daniel K. Allen, et al.* v. *Moses Smith,* 12 N. J. 159; Comyn's Digest, Viscount, 542 B. 1; *N. A. & S. Ry. Co.* v. *Grooms,* 9 Ind. Rep. 243; *Commonwealth* v. *Armstrong,* 4 Pa. 5.

Such also is the effect of section 4664, Code 1906. It confers on the under sheriff all the powers of the office and at the same time recognizes the necessity of special deputies and makes the sheriff liable for the acts of all

deputies. See also *McGuffie* v. *State,* 17 Ga. 497.; 36 Cyc. 1523, and the cases cited in the notes.

Such being the law at the time section 4664, Code 1906, was adopted, the only change made by that section in the common law on the subject was to confer on the general deputy or under sheriff, all the power of the office, and to require an oath of office along with written appointment made matter of record. It recognizes the necessity of specific deputies, but made no change with reference to their manner of appointment. While their appointment in writing is provided for, such writing is not necessary to the validity of their appointment, at any rate so far as third parties and the validity of their official acts are concerned. In *Pickens* v. *McNutt,* 12 S. & M. 651, this court has held that the sheriff is liable for the act of deputies appointed without writing and that where a written appointment is necessary failure to do so is itself a breach of his bond.

It would be strange indeed if the law permitted the sheriff to perform official acts through deputies and not be liable for their conduct. The obligation of the surety covers all official liability of the sheriff. The general rule is that the sheriff is liable for any act of any deputy when he would be liable if he had done the act himself. 13 L. R. A. 721, 54 L. R. A. 220.

Anderson, J., delivered the opinion of the court.

Mrs. Edna Brannon, appellee, brought this action in the circuit court of Forrest county against appellants A. E. Dean, sheriff of George county, and the surety on his official bond, United States Fidelity & Guaranty Company, for damages for an injury alleged to have been suffered by appellee on account of being shot with a pistol in the hands of a deputy of said sheriff while he and others representing the sheriff were engaged in the performance of an official duty of such sheriff. The action was on the bond of appellant Dean, as sheriff, and the surety thereon, United States Fidelity & Guaranty Com-

pany, alleging a breach of the bond by the sheriff because of the tort aforesaid having been committed on her by his deputies and assistants. There was a jury and verdict and judgment for appellee for two thousand five hundred dollars, from which appellants prosecute this appeal.

There are only two questions that we consider of sufficient gravity to call for a discussion. They are: (1) That the trial court erred in not changing the venue on the application of appellant Dean to George county, of which county he was a resident citizen and freeholder; (2) whether or not, under the evidence in the case, appellants were entitled to a directed verdict on the ground that the evidence did not tend to establish liability on their part.

We will discuss these questions in the order stated, and in doing so develop the controlling facts out of which each question arises.

(1) Appellant Dean was sheriff of George county and a resident citizen and freeholder of that county. Appellant United States Fidelity & Guaranty Company was a foreign corporation doing business in this state, with an office and place of business and agent on whom, under the laws of this state, process could be served, in Forrest county, as well as other counties in this state. This action was brought in Forrest county. Appellant Dean alone made application to change the venue to George county. Section 707, Code of 1906 (section 486, Hemingway's Code), provides, among other things, that—
"Civil action of which the circuit court has original jurisdiction shall be commenced in the county in which the defendant, or any of them, may be found. . . . If a citizen resident in this state shall be sued in any action, not local, out of the county of his household and residence, the venue shall be changed on his application, to the county of his household and residence."

It will be noted that the statute provides that the action shall be commenced in the county in which any one or more of the defendants may be found. The question is whether or not the appellant, United States Fidelity

& Guaranty Company, came within that definition; in other words, whether or not it was a defendant in this cause found in Forrest county, where the action was brought.

Appellants contend that appellant United States Fidelity & Guaranty Company, being a foreign corporation, although having a place of business and an agent in Forrest county subject to process, was not found in that county in the meaning of this statute. We think this question is controlled by *Indianola Cotton Oil Company* v. *Crowley*, 121 Miss. 262, 83 So. 409. In that case the action was brought in Sunflower county, against Indianola Cotton Oil Company and J. H. Petty. The cotton oil company was a domestic corporation, and was located and doing business in Sunflower county, while the other defendant, Petty, was a resident freeholder of Leflore county. The defendant Petty made application under the statute being considered to remove the cause to Sunflower county. The court held that the cotton oil company was a defendant found in Sunflower county within the definition of the statute. The difference between that case and this is that appellant United States Fidelity & Guaranty was a foreign corporation instead of a domestc corporation. But it had an agent subject to process and a place of business in Forrest county. It is true that in discussing the question in that case the judge writing the opinion stated that the cotton oil company was domiciled or resided in the county in which the suit was brought. The court, however, did not mean to decide, and did not decide, that domicile or residence was determinative of the question whether the action had been brought in the right venue. The statute does not provide that suit may be brought where any one of the defendants may be domiciled or reside. It provides that it may be brought where any one or more of the defendants may be found. We hold that for the purposes of suit appellant United States Fidelity & Guaranty Company was just as effectually found in Forrest county as if it had been a domestic corporation with its principal place

of business in that county. Just as much so as the Illinois Central Railroad Company, a foreign corporation, is found, for the purpose of suit, in every county in this state through which it runs and has an agent subject to process.

(2) In determining the question whether or not appellants were entitled to a directed verdict, the evidence must be treated as proving every fact favorable to appellee's case which it established either directly or by reasonable inference. So viewing the evidence, which was believed by the jury, the following case was made on behalf of appellee:

On the evening of the 30th of June, 1923, at the usual hour for religious services at country churches in this state at that time of year, appellee, with her husband and infant child six weeks old in her arms, and their three other children, and three children of a sister of her husband, were driving in their Ford truck from their home in George county to Rock Creek Church, to attend preaching. Appellee, her husband, her infant child, and one of her other children were on the seat of the truck. Her husband was driving. It was dark. They were going south in a lane. There was no pretense that they were violating the law in any respect whatever. On the contrary, as stated, they were on a mission quite the reverse. As they were passing through the lane James Goff, at that time marshal of Lucedale in George county, stepped out in front of the truck with a flash light in his left hand, which he waved, and a pistol in his right hand, and commanded Mr. Brannon, the driver, to halt. His command was not promptly obeyed, and Goff thereupon fired his pistol toward the occupants of the truck, shooting appellee, Mrs. Brannon, the bullet passing through her arm, entering her body near her right breast, and going through the body and lodging under her shoulder blade. Appellee exclaimed that she was shot. Goff said he made a mistake, and "shot into the wrong crowd." He also said that appellee was not shot because the car-

tridge was a blank cartridge. He learned, however, in a moment, she was shot.

This case was tried in November, 1924, more than a year after appellee was shot; the evidence showed that the bullet had never been removed from her body; that she still suffered; and that her injury would probably be permanent. Appellant Dean, the sheriff of George county, was not present at the shooting. There were present, besides James Goff, the marshal of Lucedale, who did the shooting, Ollie Ward, appellant's chief deputy, and one Passon. Appellant Dean had information that "the Shepherd boys and A. Arnold" were expected to pass south that night through the lane where appellee was shot in a Ford truck, with intoxicating liquors therein, in violation of law, and requested his deputy, Ward with Goff and Passon, to take the necessary steps to hold up and search the truck when it appeared, and make the necessary arrests which such search might call for under the law. Accordingly Goff went before a justice of the peace, made the necessary affidavit, and obtained a search warrant to search the Ford truck of "the Shepherd boys and A. Arnold" for intoxicating liquors. The sheriff's deputy, Ward, took Goff, who had the search warrant in his possession and retained it to the end, with the knowledge of Ward, and Passon in his car to the lane where appellee was shot. Between them they arranged for the holding up and search of the expected truck as follows: The truck was expected to go south. Ward took his stand toward the north end of the lane while Goff and Passon took their stand in the lane south of Ward. It was understood between them that when the truck should be discovered by Ward he would strike a match, which should be a signal to Goff and Passon that the truck for which they were on the lookout was approaching, and that thereupon Goff and Passon were to hold up the truck and make the necessary search for the liquors. Ward, Goff, and Passon claimed that they took the truck in which appellee and her husband and party were traveling to be the one for which they were lying in wait, and

that for that reason the shooting resulted. Neither Goff nor Passon was regularly deputized in writing as deputy sheriff. Goff, however, had frequently, at the request of the sheriff, assisted the latter in "making raids" for intoxicating liquors and stills possessed and operated in violation of law.

Appellants' position is that they are not liable for the shooting of appellee, because Goff, who did the shooting, was not a legal deputy sheriff; and, as we understand, appellants contend that, even if he was a legal deputy, the sheriff and his bondsman are not responsible for his act because he was acting beyond the scope of his powers.

It is true that section 4664, Code of 1906 (section 3081, Hemingway's Code), provides that deputy sheriffs shall be appointed in writing and subscribe to an oath to faithfully execute the duties of their office, etc. But our statutes are not the source of all the powers of a sheriff; many of his powers are of common-law origin. He may summon a posse *comitatus*. He may summon one or more bystanders, when necessary, to assist him in the execution of process; he may summon and take with him assistants or bailiffs to execute process and make arrests, and such summons may be verbal and not in writing. And a sheriff's chief deputy is undersheriff, and acts in the place of the sheriff in his absence, as fully as the sheriff can act himself. 3 Bouvier's Law Dictionary, Rawles' Third Revision, pages 3058-3059; 24 R. C. L., pp. 916-924, inc., sections 6-13, inc.

Even though it be true that as between the sheriff and Goff and Passon, the latter were not legal deputies, nevertheless, under the law, they were *de facto* deputy sheriffs acting under the summons of the sheriff, and also his undersheriff, Ward. As to the outside world dealing with such deputies the sheriff is estopped to deny that they were legally appointed. He is bound by their acts just as effectively as if they had been regularly appointed deputy sheriffs. *Pickens* v. *McNutt,* 12 Smedes & M. 651; *Alabama, etc., R. R. Co.* v. *Bolding,* 69 Miss. 255, 13 So. 844, 30 Am. St. Rep. 541. And, furthermore, under

the facts of this case, it stands exactly like it would have if the sheriff had been present himself and had struck the signal match. His deputy, the undersheriff, Ward, was present with full authority to act in his place. And, according to the evidence on behalf of appellee, which was believed by the jury, the sheriff had expressly commissioned all three of them to go on that night's search.

Of course, it is true that the sheriff did not authorize either Goff, Passon, or Ward to hold up and search the truck in which appellee was riding, and shoot her. But that is not the criterion. Ward, the undersheriff, and his assistants were acting within the general scope of their authority. They thought they were holding up for search the truck of "the Shepherd boys and A. Arnold." But it developed that they were mistaken; that they had "shot into the wrong crowd." In other words, it may be conceded that they exceeded their authority. Nevertheless that did not exonerate the sheriff and his bondsman from liability. It does not need the citation of authority to support the proposition that an agent acting within the general scope of his powers binds his principal, even though he violates instructions and steps beyond his authority.

We find no merit in the other questions argued on behalf of appellants.

*Affirmed.*