J. W. SANDERS COTTON MILL CO., INC., *v.* BRYAN *et al.*

(Division B. March 21, 1938.)

[179 So. 741. No. 33109.]

John D. Greene, Jr., of Starkville, and Watkins & Eager, of Jackson, for appellant.

575

**Lavell Brown,** of Starkville, for appellees.

Argued orally by **John D. Greene, Jr.**, and **Tom Watkins,** for appellant, and by **Lavell Brown,** for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

John Bryan, a minor, by next friend, brought suit against the appellant for a personal injury sustained by him, the index and middle fingers of the left hand being severed at the palm, and the ring finger injured, while he was engaged in the operation of a shearing machine used in the appellant mill at Starkville, Miss., in the manufacture and processing of cloth. He sued for $15,000, and recovered a verdict for $7,500, for which judgment was entered; from which judgment this appeal is prosecuted.

The grounds upon which negligence is alleged in the case were: First, that the appellant had not properly instructed the appellee, an inexperienced employee; second, that the machine furnished the appellee was out of repair generally, particularly in that it would not trip automatically; third, that the appellant should have furnished a guard which would prevent appellee from putting his hand into the blades. Or, stated another way, that the appellants had not furnished the appellee a safe place in which to work, and a safe instrumentality with which to do the work; and had not instructed appellee in the proper method of operating the machine, he being a minor 17½ years of age, and claiming to be inexperienced in the operation of the particular machine here involved; and had not furnished a guard which would have prevented plaintiff's hand from being caught in the machine—which guard was placed on the machine after the injury was sustained.

The plaintiff testified with reference to the character and construction of the machine as follows:

"Q. Now explain to the jury, if you can, what you were doing at the time you got hurt? A. Well, at the

time I got hurt I was running the machine. This machine they call a shearing machine, great wide machine, got four sets of knives and blades on it to cut the threads off the end of the selvedge of the cloth. This machine will tear the cloth up if any of it gets wrinkled bad enough and bad places go through there this machine will cut the cloth just like it cuts threads. At the time I got hurt the cloth was matting at the front of the machine in the middle. I knowed it would get cut in the middle. The boss man told me not to let the cloth get cut that morning. I kinder reached over and straightened it out and the next thing I knowed I was cut.

"Q. What instruction, if any, did the boss man give you about operating that machine on that day or any other day? A. First day I went to work he carried me around and showed me how to turn down the selvage, up in the middle of the machine, with little sticks to turn it up and he pointed at the three blades in the middle of the machine. He said, 'Watch those blades' didn't say anything about the big blades and he told me that Saturday night in the presence of one of the employees that, 'You start this machine up and keep it going,' not to leave it unless it stops. 'We don't want this cloth to be cut.' Special run of cloth we had to get out, get it billed that day, so that was what I was doing. He also said he would not be in the mill at the time I started up, told another fellow to help me start the machine. This other fellow helped me start this machine up and he left. Possibly an hour after we started to work the boss man came in. He came over there. I had the machine stopped. I went to get a drink of water. He said, 'You ain't been running this machine.' I said 'Yes, sir, just been stopped about three minutes.' He said, 'Well, you are still two rolls behind.' "

He further testified that the foreman did not tell him to be careful about putting his hands on the cloth.

The appellee had worked in the weaving room of the

cotton mill for some months prior to the injury, and for a short time prior thereto had operated a stitcher and shearing machine jointly. The shearing machine had a lever, called a "tripper," which was used to prevent cutting certain parts of the cloth as it passed through the machine. This machine usually operated automatically, but failing at times to do so, had to be manipulated by hand. There was also a bar under the machine, by means of which the machine could be stopped or started by placing the foot on the lever.

The appellee testified further as follows:

"Q. Johnnie, did you know how to operate that machine? A. I wouldn't say I knowed. I had instructions showing a little how to operate it. I never had operated it. I operated it only with another machine. Didn't have time to watch this machine running because I had to run the other one."

The cloth being run through the shearing machine on the day of the injury was 38½ inches wide, the edges being thicker than the middle of the cloth; the shearing machine was used to cut the loose threads and trim the edges of the cloth, and was being operated to allow 75 yards of cloth to pass through the machine per minute—a yard and a quarter per second. The cloth became wrinkled, and the plaintiff, appellee here, undertook to straighten the cloth with his hand, which was drawn into the machine. Another experienced witness, testifying as to the safety of the machine, said it was safe if you didn't get your hand close to it; that when the cloth became wrinkled he used his hand to straighten it; and that it was better to do this when the machine was in operation—that the machine was not safe if you put your hand close to it. There was considerable testimony for the plaintiff along the line indicated.

The foreman for the defendant below testified that he showed the plaintiff how to operate the machine, and gave him full instructions; that the machine was not

difficult to understand or operate; and that his own son, then fifteen years of age, had operated it subsequent to the injury.

There was also testimony to the effect that after this injury was sustained by the plaintiff, the superintendent of the mill had an iron bar placed in front of the machine where the plaintiff's hand was caught, so that it was thereafter impossible for a person to get his hand in the machine without lifting this bar. There was also testimony for the appellant that this particular type of machine was of standard type and make, and reasonably safe, and that it was in use in a number of mills throughout the country.

The appellant contends that it should have been granted a peremptory instruction, and that on the testimony in this record refusal to do so was error. When the plaintiff's testimony was closed, the defendant made a motion to strike the evidence and direct a verdict for the defendant, which motion was overruled. Thereupon the defendant closed its proof in regard to the safety of the machine, contradicting plaintiff's evidence as to instructions given him in connection with the operation thereof.

After consideration of the evidence in this case, we think there was sufficient conflict therein as to the safety of the machine to make it a question for the jury, as well as to whether or not the plaintiff had been properly instructed in the use of the machine; and therefore the action of the court in refusing the peremptory instruction was not error.

In addition to the general issue, the defendant filed a special notice under the general issue to the effect that it would prove that if the plaintiff was injured as alleged in the declaration, the injury was the result of carelessness and recklessness of plaintiff in the operation of the shearing machine, in violation of instructions given plantiff as to the proper and safe manner of performing his work in the operation of this machine; that the neg-

ligence of the plaintiff was the sole and proximate cause of plaintiff's injury.

The plaintiff, being a minor, 17½ years of age, should have been instructed by the defendant as to the construction of the machine, manner of operation, and the dangers attendant on its operation. In 39 C. J. 514, it is said: "Where the master knows, or ought to know, the dangers of the employment, and knows, or ought to know, that the servant, by reason of his immature years or inexperience, is ignorant of, or unable to appreciate, such dangers, it is his duty to give him such instruction and warning of the dangerous character of the employment as may reasonably enable him to understand its perils."

At page 522 of the same volume it is said: "It is the duty of a master who employs a servant in a place of danger to give him such warning and instruction as is reasonably required by his youth, inexperience, or want of capacity, and as will enable him, with the exercise of reasonable care, to perform the duties of his employment with reasonable safety to himself; to this end the danger and its nature and extent should be pointed out, and the method of avoiding it shown. Where the servant is a minor, the master must put his warning in such plain language as to be sure that the servant understands and appreciates the danger. It is not enough that he should do his best to make the servant understand; he must actually understand and appreciate the danger."

In Illinois C. R. Co. v. Price, 72 Miss. 862, 18 So. 415, the court held, in a case where the plaintiff was an inexperienced switchman injured while attempting to couple two cars, under the orders of his superior, which coupling was defective, and unlike those in use on the defendant's cars, that the defendant company was liable. In this case the plaintiff was an adult. See, also, 18 R. C. L. 567, 572; Dobbins v. Lookout Oil & Refining Co., 133 Miss. 248, 97 So. 546; Cumberland T. & T. Co. v. Cos-

nahan, 105 Miss. 615, 62 So. 824. See, also, 39 C. J. 283, sections 410 and 411, where it is said: "The employer of inexperienced servants must observe a higher degree of care for their safety than he is required to exercise toward experienced servants, the rule being analogous to that existing with regard to minors. The mere fact of minority does not necessarily impose on the master any other or greater degree of care in respect to the minor than would be the case if the servant has attained full age. However, the duty of persons who employ minors to anticipate the ordinary behavior of children and to take notice of their lack of judgment must be taken into consideration in the determination of whether due care has been exercised, and to this extent it must be considered to be the duty of the master to exercise greater care for and toward them than is required by law to be exercised toward and for adults, and where a minor is employed in a business the danger of which he is unable, by reason of his immature judgment, to comprehend, and is by reason thereof injured, the master is liable. The employment of a minor in a dangerous occupation or place is not negligence per se, or, as it is often stated, no presumption of negligence on the part of the master arises from the mere employment of a child about dangerous work, unless the employment is in violation of statute. A recovery for injuries sustained by a minor employee is not authorized merely because he is a child."

The safety of a place to work, or an instrumentality with which to work, may depend in some degree upon the age and experience of the person selected to operate the instrumentality. A place to work may be safe for an experienced and mature person, but not for a person of immature years and no experience. See 39 C. J. 320, section 444. It is a well-known fact that while a minor may have quick perceptions and a good memory, his capacity to reason and judge of situations may be undeveloped and inferior; consequently, it is important that

where minors are employed in and around dangerous machinery or places to work they should be carefully instructed, and the dangers pointed out with particular care. For these and other reasons, we think that the question of liability was rightly submitted to the jury, and that the jury could rightly find, as it did in this case, that the appellant was negligent.

It is contended by the appellant that the verdict is excessive. At the time of his injury the appellee was earning about $8 a week, occasionally increased to $10 by working extra hours. Taking into consideration all the facts as shown by the record, together with the evidence by the appellant that the injury was caused solely by appellee's negligence—we think the evidence shows that negligence on the part of appellee was partly responsible for the injury—and in view of the amount of his earnings, and the character of his injuries, which do not cause a total loss of earning capacity, we are of the opinion that the verdict was excessive. It is difficult to find a satisfactory standard by which to gauge compensation in such cases; but our statute on contributory negligence provides that where there is negligence on the part of both master and servant, the amount of damages allowed should be reduced in proportion to the respective negligence of the parties. After considering the matter, we are of the opinion that $4,500 is the largest sum for which a judgment should be allowed to stand, on the facts as shown by the record. If a remittitur to that amount shall be entered within ten days from the rendition of this decision, the judgment will be affirmed; otherwise the cause will be reversed and remanded.

It is also contended that the appellant should have been allowed a continuance. We have given that assignment the consideration it deserves. Continuances are largely within the discretion of the trial judge, and we do not think there was an abuse of that discretion in the present case. Consequently this assignment of error is without merit.

Affirmed with remittitur.