Farish, et al. *v.* Canton Flying Services, Inc.

May 19, 1952.

No. 38244 (58 So. (2d) 915)

John S. Holmes, and Satterfield, Ewing, Williams & Shell, for appellants.

372

Ray, Spivy & Cain, and Watkins & Eager, for appellee.

**Lee, J.**

Mrs. Susie C. Farish, widow, and Bettie Carol and Larry Donald Farish, minor children, instituted their suit against Canton Flying Services, Incorporated, to recover damages for the alleged negligent death of their husband and father, L. D. Farish. At the close of the evidence for the plaintiffs the court sustained a motion to exclude and to direct a verdict for the defendant. From the judgment entered thereon, the plaintiffs appeal.

The appellee qualified with the Veterans Administration, and was authorized to instruct and train veterans to become private and commercial pilots. Farish entered training and, in due course, obtained a license as a private pilot. He then decided to continue his training for the purpose of acquiring a license as a commercial pilot. While so doing, on October 24, 1947, his plane crashed, and he received injuries from which he died several days later. The declaration charged several grounds of negligence, namely, (1) failure of appellee to supply the plane with enough gasoline for the flight and to place a cap on the tank to retain the gasoline; (2) insufficient training of Farish to fly the Ryan plane in which he was injured; and (3) allowing a small boy to ride in the plane as a passenger.

Before recapitulating the evidence to determine whether or not it made out a case as against a peremptory. ██ ██ it must be kept in mind that such "evidence must be treated as proving every fact favorable to plaintiff's case which is established either directly or by reasonable inference." Johnston v. Canton Flying Services, Inc., 209 Miss. 226, 46 So. (2d) 533, 535; Bankston v. Dumont, 205 Miss. 272, 38 So. (2d) 721;. Kurn v. Fondren, 189 Miss. 739, 198 So. 727; Stricklin v. Harvey, 181 Miss. 606, 179 So. 345; Dean v. Brannon, 139 Miss. 312, 104 So. 173.

██ ██ It is also necessary to keep in mind the general principle that actionable negligence may be proved by circumstances. In Johnston v. Canton Flying Services, Inc., supra, [209 Miss. 226, 46 So. (2d) 535] it was said that "negligence may be established by circumstantial evidence in the absence of testimony by eyewitnesses provided the circumstances are such as to take the case out of the realm of conjecture and place it within the field of legitimate inference, and further in this connection that the causal connection between an agency and the injury sustained need not be shown by direct evidence." See also Palmer v. Clarksdale Hospital, 206 Miss. 680, 40 So. (2d) 582; 38 Am. Jur., Negligence, par. 333, p. 1032.

With these general principles as the straightedge, we proceed to a statement of the facts and their measurement, along with the logical inferences therefrom.

Farish's flight record showed that he had 14 hours and 50 minutes of dual control, that is, flying with an instructor, before he soloed. Thereafter over a given period, he had 2 hours additional of dual against 55 hours and 25 minutes of solo flying. His private flight check of 1½ hours on July 25, 1947, was unsatisfactory, and he was then given 5 additional hours of dual instruction between July 31 and August 4. His training for private pilot's license was taken in Piper Cubs or Aeroncas. These were light planes, of large wing area, with a 65

horsepower motor, and a maximum speed of 70 to 75 miles an hour. The Ryan was heavier, of less wing spread, with a 165 horsepower motor, and was faster. Farish had only 2 hours and 5 minutes of dual instruction in the Ryan.

Four eyewitnesses testified as to the manner of the crash. Three of these witnesses indicated that the plane was about a mile away and from "pretty high" to "about 1500 feet", and "around 2000 feet", when they first saw it. It rolled, wavered a time or two, and went into a bank; or wobbled it wings, made a circle, and went into a bank; or made a counter-clockwise circle, according to their several versions. Two of them heard a loud popping and sputtering sound and the motor ran no more. One of them said it sounded like a car backfiring. It did not level or straighten out of the bank. It then came on down to the ground. The fourth witness thought the plane was going to hit her house. She said the motor roared and stopped. It then went on again; then stopped; and she did not hear it any more. Three of the witnesses went to the scene of the crash for the purpose of rendering assistance. There was no fire. Although they were within 2 or 3 feet of the tank, there was no odor of gasoline and no one saw gasoline anywhere about the plane. Besides, another witness went to the scene about an hour after the crash had occurred. He saw no gasoline and could smell none. There was no cap on the tank. He stuck a stick into the tank twice, but could get no gasoline or evidence thereof.

Two expert witnesses, Cy Emery and William H. Bush, with 7700 and 4500 hours of flying respectively, testified as follows: 17 hours of dual and 18 hours of solo flying is usual for the private course, whereas for a commercial license, dual is about 55 hours and solo about 105 hours. A solo can usually be made by a student after 8 hours of dual instruction. Farish's inability to solo until he had 14 hours and 50 minutes of dual control, indicated that he was slow and that his aptitude was below normal.

His dual of only 2 hours against 55 hours and 25 minutes of solo was out of proportion as he needed more dual. The longer a student flies without sufficient dual instruction, the stronger his bad habits of flying become intrenched. Simulation of emergencies must be stressed to enable the student to react with good judgment. Farish did not have enough instruction in maneuvers, climbs, turns, and simulated emergencies. His dual instruction was not in proportion to solo and was not sufficient. There is considerable difference in handling a Piper Cub or Aeronca and a Ryan. The light planes do not respond as quickly as the Ryan, and in transferring from them to the Ryan a minimum of 5 hours of dual instruction is necessary. Two hours and 5 minutes is not enough. Without more dual instruction if the student kicks the rudder and pulls the stick with the same degree as if a light plane, the Ryan will likely go into a steep turn. With over 100 hours in the light planes and only 2 hours and 5 minutes of dual to transfer to a Ryan, the plane would probably be overcontrolled.

J. P. Rogers, appellee's manager and chief flying instructor, called as an adverse witness for cross-examination, admitted that he told Farish that there was sufficient gasoline in the plane for one hour of flying; and that Farish was given the same kind of instruction as others, though possibly at times he was given less. He would not say that he took care of Farish to the extent required. A student was supposed to receive 75% of the ground instruction or be eliminated from the school. Farish had only about 50% of such instruction and was not eliminated. He admitted that Farish was turned loose in the Ryan before he met the requirements of the curriculum, and that all students were allowed to take passengers. This witness testified to other matters which were defensive of the action, but it is not necessary to enumerate those matters as that evidence did not preclude the plaintiffs' right to submit their case to the jury.

Appellee, on cross-examination of witnesses, introduced certain written instructions for pilots, with particular reference to acrobatic flying, which is forbidden below 1,500 feet, together with the report of the aeronautical instructor that Farish attempted a snap roll at 300 to 500 feet, and other observations which were somewhat contradictory of the plaintiff's version that the plane was from 1,500 to 2,000 feet high, and that the motor was not running at the time of the crash. Those matters were likewise defensive, and are not determinative of the question before us.

Since the relationship of student and instructor existed between the appellants' decedent and the appellee, we are concerned with the duty and corresponding liability of the instructor on account of such relationship.

In Linam v. Murphy, 360 Mo. 1140, 232 S. W. (2d) 937, 941, a Missouri case, the student was injured while on a flight. It was there said that the defendants assumed the duty of giving an adequate course of pilot training by competent instructors and with suitable equipment; and it was there held that the degree of care required was that "prescribed by the familiar common law principles of negligence."

In Weadock v. Eagle Indemnity Co., La. App., 15 So. (2d) 132, a Louisiana case, it was said that such relationship makes applicable in a general way the rules and legal principles governing the relationship of master and servant.

In Aircraft Sales & Service v. Gantt, 255 Ala. 508, 52 So. (2d) 388, an Alabama case, the student was injured while in a solo flight of an Aeronca. A screwdriver was found wedged in front of the fire wall in a place where it could have come in contact with the controls before it became wedged. Relationship was there denominated as bailor and bailee, and it was there held that the thing or property bailed for use must be reasonably fit for the purpose, or capable of the use known or intended. See also 8 C. J. S., Bailments, Sec. 25, p. 258.

In Johnston v. Canton Flying Services, supra, [209 Miss. 226, 46 So. (2d) 536.] It was said that "the duty of a master to his servant is the same as the duty of a bailor to his bailee for hire in tort actions."

In Thomas v. Mississippi Products Co., 208 Miss. 506, 44 So. (2d) 556, it was held that the failure to give Thomas sufficient instruction as to the performance of dangerous work was negligence, and that it was for the jury to say whether or not such failure proximately caused or contributed to his injuries. See also J. W. Sanders Cotton Mill Co., Inc. v. Bryan, 181 Miss. 573, 179 So. 741; Bonelli v. Flowers, 203 Miss. 843, 33 So. (2d) 455; Cumberland Telephone & Telegraph Co. v. Cosnahan, 105 Miss. 615, 62 So. 824; 56 C. J. S., Master and Servant, Sec. 306, p. 1064.

Appellee furnished the plane and assumed to teach appellants' decedent how to fly. It was the teacher. Farish was the pupil or student. Because of its superior knowledge of the danger of injury and the requisite skill to prevent and avoid injury, it was in better position to judge his ability than he was himself. Under the above principles, due care required that the plane should be reasonably fit for the purpose or capable of the use known or intended, and that Farish should be sufficiently trained and instructed in the performance of his task in flying the particular plane. It so happens that the degree of care was the same in each instance.

The proof showed that it was against the rules for students to carry passengers. However, if it was negligence for the appellee to permit Farish to carry the small boy on this occasion, there is no proof either by direct evidence or by reasonable inference that he was trying to "show off" or that the boy interfered with the controls. The evidence was therefore insufficient to make a case for the jury on that issue.

The proof as to the popping, sputtering, and stopping of the motor just before the crash, and the absence of gasoline or the odor thereof after the crash,

together with the reasonable inferences therefrom, made a question for the jury as to whether or not there was sufficient gasoline in the plane to carry out the flight, and, if not enough, whether or not such insufficiency proximately caused or contributed to the crash and ensuing injury and death.

It was also a question for the jury, on this record, whether or not appellee failed to train and instruct Farish sufficiently, and, if so, whether or not such failure proximately caused or contributed to his injury and death.

In view of the conclusion reached, it is not necessary to pass on the question as to whether or not the trial court erred in refusing to allow the plaintiffs to reopen the case and offer additional evidence after, but before the court passed on, the motion to exclude. It is assumed that this question will not arise in another trial.

For the error of the trial court in sustaining the motion for a directed verdict, when the issues should have been submitted to the jury, the judgment is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

**Roberds, P. J.**, and **Hall, Arrington** and **Ethridge, JJ.**, concur.