165 So.2d 878 (1964)
William E. SNELL, Jr.
v.
INTERCOASTAL AIRWAYS, INC., et al.
No. 1455.
Court of Appeal of Louisiana, Fourth Circuit.
June 1, 1964.
Rehearing Denied July 15, 1964.
*879 Julian B. Humphrey and F. F. Willoz, III, New Orleans, for plaintiff-appellee.
Bienvenu & Culver, P. A. Bienvenu, New Orleans, for Bankers Ind. Ins. Co., defendant-appellant.
Sehrt, Boyle & Wheeler, New Orleans, for Intercoastal Airways, Inc., and James E. Stephens, defendants-appellants.
Before YARRUT and HALL, JJ., and BARNETTE, J. pro tem.
YARRUT, Judge.
All Defendants have appealed from a judgment of the district court awarding Plaintiff $8,000.00 (of a total of $42,160.00 claimed) as damages for personal injuries, loss of wages and medical expenses suffered in a crash landing of a single-engined, dualcontrol airplane in which Plaintiff was flying as a student with an instructor over Callender Field, Plaquemines Parish, Louisiana. Plaintiff answered the appeal for an increase in the award.
Defendants are, respectively, the flying school (Intercoastal Airways), its president and acting instructor who was piloting the plane at the time of the accident (Stephens), and its insurer, Bankers Indemnity Insurance Co. (Bankers Indemnity).
This matter was first here on appeal from a summary judgment of the district court under LSA-C.C.P. art. 966, dismissing Plaintiff's suit. The judgment was set aside and the case remanded for a trial on the merits, because we did not consider the record disclosed with sufficient certainty lack of primary negligence by Defendants or contributory negligence and assumption of risk by Plaintiff, as was reciprocally alleged. Snell v. Intercoastal Airways, Inc., La.App., 139 So.2d 70.
In connection with the trial on the merits, Plaintiff testified that on July 20, 1947, in the late afternoon, he reported to Intercoastal Airways for a course of instruction in piloting an airplane. Upon his arrival, Defendant Stephens, as president, informed Plaintiff that he would personally take him on a flight and instruct him in making forced landings. After six takeoffs and landings, and on the last flight, Stephens advised Plaintiff he was going to show him how to make a forced landing in case of an emergency; Stephens told him to pull the throttle at anytime and Stephens would maneuver for a forced landing; this resulted in the crash and destruction of the plane and injury to both of them.
Plaintiff charges the crash was due entirely to the negligence of Stephens in instructing him to pull the throttle at a time when it was dangerous to do so; in negligently maneuvering the plane; in attempting *880 to make a 90 turn to the left for a forced landing; and in failing to "gun" the engine for power to gain altitude, which would have avoided the crash.
Of the $42,160.00 damages claimed, all except $1,610.00 accrued medical and doctor bills and $550.00 to accrue; $3,500.00 accrued loss of wages and $1,500.00 to accrue, was for personal injuries, pain and suffering.
In their joint answer Defendants denied all allegations of Plaintiff except the allegation that Plaintiff did pull the throttle of the plane and cut off the supply of gasoline to the engine, when the plane was at an altitude of no more than 300 feet. In the alternative, Defendants alleged the crash was due to Plaintiff's contributory negligence and assumption of risk, because he held a private pilot's certificate from the Civil Aeronautics Administration since August 22, 1946, and had flown over 100 hours, 72 of which were solo flying; that he was familiar with the dangers of flying, notwithstanding which and while the plane had reached an altitude of 300 feet, Plaintiff pulled the throttle and cut off the supply of gasoline to the motor, leaving the plane without flight power, the loss of which, at such low altitude, is most hazardous in an emergency; which emergency Stephens could not avoid.
Defendant Bankers Indemnity specially denied liability, as Stephens was not a licensed instructor at the time of the accident and its policy, under Declaration No. 7, provides that the aircraft will be flown only by a pilot holding a proper license or certificate issued by the Civil Aeronautics Administration of the United States Department of Commerce; and Section A, Paragraph 3, that the policy will not apply if a loss occurs while the aircraft is operated by a person other than pilots named in the Declaration, who must be properly licensed or certified; and no liability if the aircraft is operated with the consent of the assured, or an executive officer, in violation of the U. S. Federal Regulations on Civil Aviation concerning certification of pilots; and that, in any event, its liability is limited to $10,000.00 for one person.
Mr. Maynard, a well-qualified expert aviator and instructor holding many ratings and licenses as such, was asked if he were teaching a student to fly in a "Steerman" plane at Callender Field in Louisiana, which was bordered by growing trees, and had just taken off and reached an altitude of 300 feet, when the student turned the throttle down to idle, would he have acted as Stephens did. He answered that Stephens' action was not sound flying instruction because the possibility of the plane stalling in the turn around the trees was a hazardous maneuver even in a small plane like a "Steerman".
The record discloses that a "Steerman" aircraft is a dual-control, two-seated, biplane, weighing a maximum of 3000 pounds, and was used extensively by the U. S. Army and Navy for training military and naval pilots during World War II, after which they were sold as surplus war material. The front seat is for the pilot instructor and the rear seat for the student pilot, each able to control the plane.
After the trial on the merits, the district judge in rendering judgment for Plaintiff for $8,000.00 in globo, without fixing the amount of each item of damage sustained, gave his reasons as follows:
"At the trial on the merits, it was established that plaintiff reported to the school for further lessons, in order that he might secure a commercial pilot's license, and when he found his instructor absent, Stephens, the President of the School, a licensed pilot of considerable experience, agreed to fly with him and offered to show him how to make forced landings. The relationship of student and instructor therefore was established and it is of no significance that Stephens did not possess an instructor's license.

*881 "While the plane was aloft, Stephens instructed plaintiff, who was at the dual controls, to cut off the throttle, and after this was done, Stephens was about to make a perfect landing;, when he decided at the last minute to turn the plane slightly to the left to land nearer the center of the field, a totally unnecessary maneuver. In making the turn, Stephens caused the plane to tilt, resulting in its landing on a wing, as a consequence of which plaintiff sustained injuries.
"Defendant contends that plaintiff contributed to the accident by having his hands and feet on the dual controls, which interfered with the operation of the plane. This is something Stephens should have anticipated. In my opinion, the proximate cause of the accident was the unnecessary lastminute maneuver which Stephens made, and Stephens and Intercoastal Airways, Inc. are liable for their negligence.
"The insurer is liable in this case. The policy concededly covers the accident in this case, but it is contended that the exclusion clause excludes any operation with the consent of the insured `in violation of the United States Federal Regulations for Civil Aviation applying to * * * certification of pilots.' There was no proof of any violation with respect to certification of pilots. Both plaintiff and Stephens were licensed pilots. The fact that Stephens had no instructor's license does not bring the case within the exclusion clause."
See Weadock v. Eagle Indemnity Co., La. App., 15 So.2d 132; Farish v. Canton Flying Services, 214 Miss. 370, 58 So.2d 915; Lange v. Nelson-Ryan Flight Service, Inc., 259 Minn. 460, 108 N.W.2d 428; 14 Code of Federal Regulations (rev. as of Jan. 1, 1963), sec. 60.2, in force at the time of the crash, to the effect that a pilot in command of the aircraft shall be directly responsible and shall have final authority as to the operation of the aircraft.
Regarding quantum, the only witness to testify was Dr. Blaise Salatich, an orthopedic surgeon, whom Defendants sought to completely discredit because of the rejection of his testimony in the following cases: Norman v. Standard Supply and Hardware Co., La.App., 126 So.2d 776; Easterling v. J. A. Jones Construction Company, La.App., 115 So.2d 888; Smith v. W. Horace Williams Company, La.App., 84 So.2d 223; Vogts v. Schwegmann, La.App., 56 So.2d 177. However, since there is no contrary medical testimony offered by Defendants, we must consider it.
As a result of the crash Stephens was rendered unconscious, and Plaintiff was able to assist him in getting out and putting him into an ambulance to be taken to the hospital. Plaintiff was able to walk away and required no hospitalization.
Dr. Salatich testified that shortly before this accident he was treating Plaintiff for a fractured finger sustained in a motorcycle accident, and after this plane crash had X-rays made which showed hypertrophic changes, which he admitted preexisted the accident in question.
Though Dr. Salatich testified he treated Plaintiff daily for some years and his original bill of $1,610.00 is listed in Plaintiff's original petition filed in 1948, the doctor had difficulty finding his records and, in the fifteen years from the filing of the suit to its actual trial, he received only $50.00 on account from Plaintiff.
With respect to the $5,000.00 claim for loss of wages ($3,500.00 at the time of filing of the suit plus $1,500.00 contemplated loss in the future), the Plaintiff testified he was employed by the U. S. Government and that his position had been abolished as the only reason he could not return to work for one year.
From the testimony of Dr. Salatich, and his own, we must conclude Plaintiff suffered *882 no more than a temporary aggravation of his preexisting injuries which lasted not over two months, and which could not have prevented his working for more than eight weeks, at a loss of salary of $75.00 per week, or $600.00.
Concerning his medical bills, we do not think Plaintiff has sustained the burden of proving at this time that he is legally obligated to pay or to recover for any doctor bill resulting from the injury, other than the $50.00 Dr. Salatich admitted he received in fifteen years for his treatments.
The evidence shows Plaintiff suffered some aggravation of preexisting injuries; pain and limited motion in the neck necessitating his wearing a restrictive collar; and pain in the wrists, for which he wore an arm cast a short time, from attempting to break his forward motion when the plane crashed. His shoulder harness and safety belt stretched to some degree at the impact, and he bounced back in his seat, exerting a forceful snapping effect on his neck. He was, however, able to walk away from the crash and did not require hospitalization. Although Dr. Salatich testified treatment lasted over several years, Plaintiff admitted his principal treatment was for less than a year. We consider $1,500.00 to be a fair award for Plaintiff's injuries, pain, and discomfort. White v. Robbins, La. App., 153 So.2d 165; Doyle v. McMahon, La.App., 136 So.2d 89; Townsend v. Maniscalco, La.App., 128 So.2d 906; Degeyter v. Trahan, La.App., 113 So.2d 808.
With reference to Defendants' contention that interest on the judgment should not begin from the institution of the suit but only from the date of judgment because Plaintiff delayed filing supplemental pleadings, we find no merit in this contention. The only penalty the law provides for delay in prosecuting a suit is its dismissal, if Plaintiff allowed five years to elapse without having taken any steps in its prosecution, LSA-C.C. art. 3519, LSA-C.C.P. art. 561. The record does not show that Defendants made any move for the dismissal for nonprosecution.
The judgment of the district court is amended by reducing it to $2,150.00, of which $600.00 is for lost wages, $50.00 for medical bills, and $1,500.00 for personal injuries, pain and suffering; and in all other respects is affirmed.
Judgment amended and affirmed.