Cumberland Telephone & Telegraph Co. *v.* J. C. Cosnahan *et al.*

[62 South. 824.]

1. **Electricity.** *Wires. Duty to guard. Care required of electric companies. Master and servant. Injury to servant. Assumed risk. Duty to warn servant. Evidence. Sufficiency. Injury to third persons. Liability. Instructions. Based on evidence. Negligence. Contributory negligence. Effect. Laws 1910, chapter 135.*

Where a city owns and operates an electric light plant and its wires cross the wires of a telephone company, it is the duty equally of the city and the telephone company, in so far as third persons are concerned, to place a guard wire or other device, to prevent the contact of their wires in the event of their falling.

2. **Same.**

The duty of thus guarding its wires rests upon the city, for the reason that corporations and persons engaged in any business requiring the use of wires highly charged with electricity are required to use the highest degree of care in order to confine this deadly current to its wires and thus prevent its escape to the danger of life and property.

3. **Same.** °

The same duty in such case rests on the telephone company, for the reason that it is bound to know that in the event its wires should fall they would necessarily come in contact with the electric light wires and become highly charged with electricity and dangerous to life and property.

4. **Master and Servant.** *Injury to servant. Assumed risks.*

A telephone company, though guilty of negligence in permitting its wires to become crossed with electric light wires, is not liable for the death of its lineman, who is killed while repairing its wires, as this is a risk assumed by him as an incident to his employment, unless knowing his inexperience, it failed to properly warn and instruct him relative to his work, and the dangers incident thereto.

5. Master and Servant. *Duty to warn servant.*

Where the inexperience of a telephone lineman was known to the telephone company, the duty devolved upon it of instructing him relative to the dangers incident to his work, which would not be obvious to a man of inexperience, and to instruct him how to inspect a situation, ascertain the source and character of the trouble and to remedy it.

6. Master and Servant. *Injury to servant. Evidence. Sufficiency.*

In a suit against a telephone company for the death of its lineman, where there is a conflict in the evidence, it is a question for the jury to say whether an inexperienced lineman had been instructed by the company relative to the dangers incident to his work.

7. Electricity. *Injury to third persons. Liability.*

Where a telephone company and an electric light company were both negligent in permitting their wires to come in contact and a lineman employed by the telephone company was killed in repairing the trouble, the fact that the lineman assumed the risk as an incident to his employment with the telephone company did not operate as an assumption of such risk as to the electric light company, nor prevent a recovery against such electric light company.

8. Trial. *Instructions. Basis in evidence.*

An instruction should not be given where there is no evidence upon which to base it.

9. Laws 1910, Chapter 135. *Contributory negligence. Effect.*

Under Laws 190, chapter 135 so providing, no contributory negligence, whether simple or gross, will bar a recovery, but will simply cause a diminution of the amount thereof.

Appeal from the circuit court of Lincoln county.

Hon. D. M. Miller, Judge.

Suit for damages by J. C. Cosnahan and others against the Cumberland Telephone & Telegraph Company and the city of Brookhaven. From a judgment for plaintiff against the telephone company and a judgment in favor of the city, both sides appeal.

The opinion states the facts in this case. The instructions referred to are as follows:

"(2) The court instructs the jury, for the defendant city of Brookhaven, that if you believe from the evidence that Wm. Cosnahan, the deceased, on the occasion in question, was reckless and grossly negligent, then you must find for the defendant city of Brookhaven, even though you may believe from the preponderance of the evidence that the city of Brookhaven was negligent.

"(3) The court instructs the jury, for the defendant city of Brookhaven, that if you believe from the evidence that Wm. Cosnahan came to his death solely by his own negligence, then you must find for the defendant city of Brookhaven."

Chapter 135, Laws of 1910, provides as follows:

"In all actions hereafter brought for personal injuries, or where such injuries have resulted in death, the fact that the person injured may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured. All questions of negligence and. contributory negligence shall be for the jury to determine."

*Harris & Potter,* attorneys for appellant.

*T. Brady, Jr.* and *H. Cassedy,* attorneys for appellee and cross appellants.

No brief of counsel on either side found in the record.

SMITH, C. J., delivered the opinion of the court.

This suit was instituted in the court below. by the fathers, brothers, and sisters of W. C. Cosnahan, deceased, to recover of the Cumberland Telephone & Telegraph Company and the city of Brookhaven damages for the death of W. C. Cosnahan, alleged to have been caused by the joint negligence of the telephone company and of the city. There was a verdict and judgment in favor of plaintiffs against the telephone company and against

plaintiffs and in favor of the city, and the case comes to us on direct appeal by the telephone company and on cross-appeal by the plaintiffs.

The city of Brookhaven owns and operates an electric light plant, by which it lights its streets and the residences of its citizens who will pay therefor. The Cumberland Telephone Company is engaged in the telephone business, and owns and operates an exchange in the city of Brookhaven. The electric light and telephone wires are strung along the streets of the city, and on Second street they run parallel with each other; the telephone wires being on the east and the electric light wires on the west side thereof. At a certain point on this street two of the telephone wires cross it in order to reach the residence of Dr. Love, one of the company's subscribers. These wires cross the street diagonally over the electric light wires. No guard wire or other device, was placed by either the city or the telephone company at this point of intersection of their wires to prevent them from coming in contact in the event the telephone wires should fall. In addition, the insulation on the electric light wires at this point had become defective, and to some extent had fallen off. These telephone wires were so negligently fastened to their support that when, on the occasion in question, they were struck by a flying pigeon, they fell and came in contact with the electric light wires, by reason of which they became heavily charged with electricity, resulting in Dr. Love's telephone being put out of commission, or rather in causing the bell attached thereto to ring continually. The fact that Dr. Love's telephone was "in trouble" was communicated by some member of his family to the telephone company's manager, but exactly what information was given him does not appear. About the same time, which seems to have been between seven and eight o'clock p. m., some one telephoned to the exchange that an electric light pole was on fire at the top "down there."

At the telephone exchange there is an instrument which will usually indicate the fact of a telephone wire becoming heavily charged with electricity, and which particular wire is so charged; but whether this instrument indicated this fact on the occasion in question does not appear. At about eight-thirty p. m. Dr. Love, who seems to have been absent, returned to his home, and, going first to his barn, met there W. C. Cosnahan, the deceased, who informed him that his telephone was in trouble, and that he (Cosnahan) was trying to fix it. Cosnahan stated that he did not know what the trouble was, but he seemed to think it was caused by the telephone wires being crossed with each other at a point near the barn, where they ran through the branches of a tree. He spent some time in trying to separate these wires, if in fact they were crossed, but with what success does not appear. The telephone bell, however, continued to ring, and finally Cosnahan muffled it in some manner so that its ringing was not sufficiently loud to disturb the family. He told Dr. Love he ''was afraid to fool with it further,'' without stating why, and either he or Dr. Love, which one does not definitely appear, stated in the presence of the other that if he did so he might get hurt. Dr. Love then told Cosnahan to go home and wait until the next day to remedy the trouble. Cosnahan then left the house, and Dr. Love retired for the night. Later in the night, Cosnahan was discovered lying on the side of the street, near Dr. Love's residence, with a telephone wire heavily charged with electricity wrapped around one of his legs, just above the ankle. The evidence all indicates that he had climbed the telephone pole, cut the wire on the side next to the place where it was crossed with the electric light wire, and let it fall to the ground, and afterwards, in some way, became entangled therewith. Dr. Love's house was only a short distance from the place where these wires were crossed.

Cosnahan had been working for the telephone company as a lineman and trouble-man for not more than two and

a half months, including several weeks during which he served without pay as an apprentice, in order to learn the business. At the time he entered the company's employ as an apprentice he was wholly without experience in this line of work, which fact was evidently known to the company. He was placed under the supervision of an employee of the company, a lineman, from whom he received whatever instruction he did in fact receive relative to his duties and the dangers incident thereto. There is nothing indicating that Cosnahan knew that this telephone wire was in contact with the electric light wire and had thereby become heavily charged with electricity, except that he knew of the continuous ringing of Dr. Love's telephone bell, and one of the effects of a telephone wire becoming heavily charged with electricity being the continuous ringing of the bell of the telephone to which it is attached, which fact ought to be and usually is known to a man capable of discharging the duties of a trouble-man. The duties of a trouble-man are to inspect a situation, ascertain what the trouble is, and remedy it, if possible; if not, to report it to the company's manager for instructions and assistance. Ordinarily, it is dangerous for one man to attempt to remove a telephone wire from contact with an electric light wire; two men being usually required for that purpose.

The city and telephone company were both negligent in permitting these wires to remain unprotected by a guard wire, or other device, by which their contact would have been prevented when the telephone company's wire fell. This duty rested equally upon both, in so far as third parties are concerned. Joyce on Electric Law, section 449a; 15 Cyc. 474; *McKay v. Telephone Co.*, 111 Ala. 337, 19 South. 695, 31 L. R. A. 589, 56 Am. St. Rep. 59; *Birmingham Railway, Light, etc., Co. v. Cockrum*, 60 South. (Ala.) 304; *City Electric Street Ry. Co. v. Conery*, 61 Ark. 381, 33 S. W. 426, 31 L. R. A. 570.

54 Am. St. Rep. 262; *Simmons* v. *Shreveport, etc., Light & Power Co.*, 116 La. 1033, 41 South. 248.

The duty of thus guarding its wires rested upon the city, for the reason that corporations and persons engaged in any business requiring the use of wires highly charged with electricity are required to use the highest degree of care in order to confine this deadly current to its wires, and thus prevent its escape to the danger of life and property. *Temple* v. *Electric Light Co.*, 89 Miss. 1, 42 South. 874, 11 L. R. A. (N. S.) 449, 119 Am. St. Rep. 698, 10 Ann. Cas. 924; *Potera* v. *City of Brookhaven*, 95 Miss. 774, 49 South. 617.

This duty rested upon the telephone company, for the reason that it was bound to know that in the event its wires should fall they would necessarily come in contact with the electric light wires, and, as a result thereof, become highly charged with electricity, and dangerous to life and property; and therefore, if it chose to string its wires so that this condition could arise, it was bound to exercise the highest degree of care in order to prevent its doing so.

The liability of the telephone company, however, is in nowise dependent upon its negligence *vel non* in erecting and guarding its wires, for danger from crossed wires is one of the ordinary incidents of the work in which Cosnahan was engaged, and was, therefore, assumed by him when he entered the company's employment, provided, since his inexperience was known to the company, it had properly warned and instructed him relative to his work and the dangers incident thereto. The duties of his employment required him to diagnose and remedy "trouble"—that is, defects in the company's appliances—without reference to the cause thereof, and although such defects may have resulted from negligence on the part of the company; and the rule is that "a servant put to work to repair a defective appliance cannot be heard to complain of its being defective

'inasmuch as that very thing is the cause of his being there, and he undertook to set it right, being paid for the risk he ran, and voluntarily incurring it.' '' 1 Labatt on Master and Servant, section 268; 2 Bailey on Personal Injuries, 1192; *Bell Tel. Co.* v. *Detharding,* 148 Fed. 371, 78 C. C. A. 185.

Since Cosnahan's inexperience was known to the company, the duty devolved upon it of instructing him relative to these dangers incident to his work, which could not be obvious to a man of his inexperience, and to instruct him how to inspect a situation, ascertain the source and character of the trouble, and to remedy it. On the evidence, whether this duty had been discharged, was a question for the jury. The peremptory instruction requested by the company was, therefore, properly refused.

The judgment against the telephone company must, however, be reversed, because of the errors committed by the court in granting several instructions requested by plaintiffs, which were not cured by any of the other instructions. These instructions, in effect, authorized the jury to find for the plaintiffs, in event they should believe from the evidence that Cosnahan's death was caused by his having come in contract with a telephone wire heavily charged with electricity, and which became so charged by reason of the negligence of the company. As we have heretofore stated, the company is liable, if at all, not by reason of negligence in permitting these wires to come in contact, but by reason of a failure to warn and instruct Cosnahan.

In so far as the city is concerned however, Cosnahan did not assume any risks incident to his employment with the telephone company, and, since its negligence in permitting these wires to come in contact is clear, plaintiffs were entitled to a verdict against it; the damage sustained to be diminished in proportion to the amount of negligence, if any, attributable to Cosnahan himself, under the provisions of chapter 135 of the Laws of 1910.

There was no evidence on which to base the third instruction for the city, and the second instruction granted it was erroneous (*Y. & M. V. R. R. Co.* v. *Carroll,* 60 South. 1013) for the reason that under chapter 135 of the Laws of 1910 no contributory negligence, whether simple or gross, if negligence can be thus classified, will bar a recovery, but will simply cause a diminution of the amount thereof.

*Reversed on both direct and cross appeal, and remanded.*