## PIONEER TELEPHONE & TELEGRAPH CO. v. TULSA VITRIFIED BRICK & TILE CO.

No. 6247—Opinion Filed June 6, 1916.

Rehearing Denied August 8, 1916.

(159 Pac. 477.)

**1. Electricity — Care Required — Sagging Wires.**

Where the wires of a telephone company are so constructed and maintained that they are apt to sag and come in contact with the wires of a traction company, charged with a high current of electricity, whereby the same may be transmitted to its line, the telephone company owes to its subscribers the highest degree of care to prevent injury to the property or the life of its subscribers, and if it fails so to do and injury results proximately therefrom, the company is liable.

**2. Electricity—Injuries—Presumptions—Res Ipsa Loquitur.**

The record in this case examined, and it is held that the doctrine of res ipsa loquitur does not apply.

**3. Appeal and Error—Presentation of Objections—Instructions.**

Errors in the giving of instructions are waived unless saved in manner and form provided by statute, and if an exception be not saved to an instruction in the court below, no error can be assigned in this court by reason of the same having been given.

(Syllabus by Hooker, C.)

Error from District Court, Tulsa County; L. M. Poe, Judge.

Action by the Tulsa Vitrified Brick & Tile Company against the Pioneer Telephone & Telegraph Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Harris, Nowlin & Singleton and J. R. Spielman, for plaintiff in error.

Randolph, Haver & Shirk, for defendant in error.

Opinion by HOOKER, C. It is claimed here that on April 30, 1910, at a certain point on Maybelle street in the city of Tulsa, the plaintiff in error was the owner of and had in its use and under its control a certain telephone wire, which was stretched upon its poles, and at the same place the Oklahoma Union Traction Company was the owner of and had in its use and under its control a trolly wire stretched upon its poles; that the wire of the telephone company was not taut at said place, but was permitted to sag, which fact was known to both of said companies; that on said date the traction company had stretched and placed said trolly wire at said place, so that it came in contact with the telephone wire and so that the telephone wire rested upon the trolly wire, but that before the traction company turned the electric current on its trolly wire, it notified the telephone company of that fact and requested it to examine its lines, and that the telephone company agreed to do so, but carelessly and negligently failed, and that both the telephone and traction company, knowing that said wires were in contact, negligently and carelessly turned the current thereon, and that the trolly wire was charged with a dangerous current of electricity, and that both companies carelessly and negligently permitted and caused said wires to come in contact, whereby the telephone wire set fire to the house of the defendant in error, and destroyed the same, together with the property therein contained.

The evidence introduced here established the following state of facts: That the defendant in error was a subscriber or user of one of the phones of the plaintiff in error, and that the wire attached to said phone in the building of the defendant in error where said wire crossed Maybelle street was suspended over a trolly wire of the Oklahoma

Union Traction Company, and that on this date the line of the telephone company was in such close proximity to the trolly wire that a very strong current of electricity passed from the trolly wire to the telephone line, and as a result of which a fire was caused in the building of the defendant in error, and damage to its property thereby inflicted.

The evidence further established that the telephone company knew that the traction company was constructing its line in this vicinity and before the day of the fire there had been some controversy between the traction company and the telephone company in regard to the telephone wires being raised so that the trolly wires could be erected, and it is further shown that before the traction company turned the current on its wire, it notified the telephone company and gave to it an opportunity to inspect its lines so as to avoid injury to the property or lives of its patrons, but that it failed so to do, but notified the traction company that it was ready for the current to be turned on.

From the pleadings and the evidence it is apparent that the gist of this action is the negligence of the telephone company in permitting its line to sag and to come in contact with the trolly wire, whereby the current of electricity was transmitted from the trolly wire to the telephone line, and as a result of which the property of the defendant in error was destroyed.

Actionable negligence has often been defined by this court to consist of a duty, a failure to perform that duty, and the injury or damage resulting by reason of such failure. Measuring the liability of the plaintiff in error by this rule, is the defendant in error entitled to recover in this case? Telephone wires in themselves may be harmless, but where they are permitted to come in contact with trolly wires charged with a high current of electricity, they oftentimes prove dangerous to property and fatal to life. It cannot be gainsaid that a telephone company, where its wires are so contructed and maintained that they are apt to sag and come in contact with the wires of a traction company, charged with a high current of electricity, whereby a dangerous current of electricity is apt to be transmitted to its lines, owes to its subscribers the duty to use the highest degree of care upon its part in order to prevent injury to the property or the life of its subscribers; and in the event of a failure to use that degree of care which the law imposes, the company is liable should injury occur. In the case of Shawnee Light & Power Co. v. Sears, 21 Okla. 22, 95 Pac. 453, this court said:

"The defendant company was engaged in the business of manufacturing, producing, leasing, and selling light made from the use of electricity, which is the most deadly and dangerous power recognized as a necessary agency in developing our civilization and promoting our comfort and business affairs. It differs from all other dangerous utilities. Its association is with the most inoffensive and harmless piece of mechanism, if wire can be classified as such, in common use. In adhering to the wire it gives no warning or knowledge of its deadly presence. Vision cannot detect it. It is without color, motion, or body. Latently and without sound it exists, and, being odorless, the only means of its discovery lies in the senses of feeling communicated through the touch, which, as soon as done, becomes its victim. In behalf of human life and the safety of mankind generally, it behooves those who would profit by the use of this subtle and violent element of nature to exercise the greatest degree of care and constant vigilance in inspecting and maintaining the wires in perfect condition."

The rule is well laid down in the case of Giraudi v. Electric Imp. Co., 107 Cal. 120, 40 Pac. 108, 28 L. R. A. 596, 48 Am. St. Rep. 114, as follows:

"An electric company, in using the dangerous force of electricity not generally used, is required to use very great care to prevent injury to person or property, and it is sufficient proof of negligence for it not to raise its wires so high above a roof on which they are placed that those having occasion to go there will not come in contact with them."

Speaking on this point, the Supreme Court of Colorado, in the case of Denver Electric Co. v. Simpson, 21 Colo. 371, 41 Pac. 499, 31 L. R. A. 566, says:

"A person carrying on a business perilous to the public is bound to exercise that reasonable care and caution which would be exercised by reasonably prudent and cautious persons under the same or similar circumstances. The care should increase as the danger does, and when the business is attended with great peril to the public, the care to be exercised is commensurate with the increased danger."

The Supreme Court of Kentucky goes even further than either of these in the case of McLaughlin v. Louisville Electric Light Co., 100 Ky. 173, 37 S. W. 851, 34 L. R. A. 812, and says:

"At places where people have the right to go for work, business, or pleasure, electric light companies are required to afford them perfect protection from its wires, by having them perfectly insulated."

Also the Supreme Court of Kentucky, in the case of Paducah Light & Power Co. v. Parkman, reported in 156 Ky. 197, 160 S. W. 931, held:

"There is no distinction between the measure of care that should be exercised by an electric company in the management and care of its wires to prevent danger to those coming directly in contact with them and the measure of care that should be exercised to prevent the wires of a telephone company from becoming charged therefrom with a dangerous current of electricity; the uttermost care being required in both instances."

Also in Cumberland Telephone & Telegraph Co. v. Cosnahan, 105 Miss. 615, 62 South. 824, it is held:

"A telephone company which strings its wires so that they could come in contact with the electric light wires if they should fall is bound to exercise the highest degree of care in order to prevent their doing so."

Also in Delahunt v. U. T. & T. Co., 215 Pa. 241, 64 Atl. 515, 114 Am. St. Rep. 958, it is held that:

"It is the duty of a telephone company to its patrons to exercise at all times the highest degree of care and vigilance to protect them from a dangerous electric current over its wires from any source."

And the Court of Civil Appeals of the State of Texas, in the case of Citizens' Telephone Co. v. Thomas, 45 Tex. Civ. App. 20, 99 S. W. 879, said:

"The owner of a telephone wire so constructed as to render it probable that in falling it will fall upon or across the wire of a lighting and power company and become charged with a sufficient current of electricity from that source to make it dangerous is held to the same degree of care as though its own wire was charged originally with such current."

In the instant case the court instructed the jury that the only act of negligence chargeable to the telephone company was its failure to reconstruct its wire after it had knowledge that the trolly wire which was to be charged with electricity was to be constructed in close proximity to its line, and that if the jury found from the evidence that the company had failed to reconstruct its wires or left its wire in a position so as to come in contact with the trolly wire charged with electricity after it had such knowledge, and as a result of that failure injury was inflicted to the property of one of its patrons the company was liable.

The jury under these instructions and under the evidence presented in the case concluded that the telephone company had failed to perform the duty that it owed to its patrons to protect its property from injury by reason of electricity passing over its wires thereto, and destroying the same, and that as a result of the violation of that duty upon the part of the company the plaintiff in the

case below had been damaged and a verdict was rendered in accordance therewith.

It is unnecessary to discuss the instructions to the jury at length further than to say that the question of negligence was fairly presented to the jury, and the jury weighed the evidence and returned a verdict against the telephone company. No objection was taken, nor was any exception saved to any instruction given by the court in the trial of this cause; and, if the court committed error in the giving of any instruction, the same cannot be assigned as error here for the above reasons.

We agree with the plaintiff in error that the doctrine of res ipsa loquitur does not apply to this cause, and if the instruction complained of has the effect of applying the same, the plaintiff in error is not in a position to complain thereof, for the reason that it did not object nor except thereto when this instruction was given in the lower court, and, having failed so to do, it waived any error in the giving of this instruction.

We have carefully considered the instructions offered by the plaintiff in error which were refused by the trial court, and we are of the opinion that no prejudicial error resulted to the plaintiff in error by reason of the refusal of the court to give said instructions.

It is therefore ordered that this case be affirmed.

By the Court: It is so ordered.