**Lois BICKERSTAFF, Plaintiff-Appellant,**

**v.**

**SOUTH CENTRAL BELL TELEPHONE COMPANY, Defendant-Appellee.**

No. 81–4409

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 19, 1982.

Rehearing Denied June 15, 1982.

Wendell H. Trapp, Jr., Corinth, Miss., for plaintiff-appellant.

James Hugh Ray, Tupelo, Miss., George H. Butler, W. Scott Welch, III, Christy D. Jones, Roger M. Flynt, Jr., Jackson, Miss., for defendant-appellee.

Before GEE, GARZA and TATE, Circuit Judges.

TATE, Circuit Judge:

In this Mississippi diversity action the plaintiff was injured while talking on the telephone in her home during a thunderstorm. She brought suit against the telephone company for negligently failing to warn her of the possible danger of electrical shock when using the telephone during an electrical storm. After a trial on the mer-

its,[1] the jury rendered its verdict in favor of the defendant. The plaintiff on appeal argues (1) that the trial judge erroneously instructed the jury on the standard of care owed under Mississippi law by the telephone company to the plaintiff customer, whether "reasonable" or "ordinary" care (as charged) or, instead "the highest degree of care"; and (2) that the trial judge erroneously excluded evidence of a subsequent warning of this risk issued by the telephone company to its subscribers. Finding that the jury instructions were not erroneous and that no reversible error resulted from exclusion of the evidence, we affirm.

*The Factual Context*

On June 29, 1971 the plaintiff, Lois Bickerstaff, was injured while talking on her home telephone during a thunderstorm. She alleges that, when she answered the telephone, lightning was conducted through the telephone lines to her telephone, entering her body through her left ear and rendering her unconscious. Bickerstaff was treated at a local hospital for damages to her left eardrum, heightened blood pressure, and a subsequent nervous breakdown.

She sued the telephone company in Mississippi state court alleging, *inter alia*, that the defendant knew or should have known of the defective design, construction, installation and maintenance of its telephone line, that the defendant breached its duty to the plaintiff to warn of the possibility of such an injury when using the telephone during a thunderstorm, and that the defendant owed the plaintiff the highest degree of care to protect her from the dangers of electricity.

The telephone company removed the action to federal court on the grounds of diversity jurisdiction. At the first trial in March 1980, the plaintiff went to trial relying only upon the failure of the defendant telephone company to warn the plaintiff of the fact that lightning can be conducted

into a telephone, as allegedly required in the exercise of the highest degree of care owed to its subscribers. At the close of Bickerstaff's case the telephone company moved for a directed verdict. The trial judge granted the motion, holding that it is a matter of common knowledge that lightning is a dangerous agency, and that in this instance the defendant was under no duty to warn of matters which were common knowledge.

On Bickerstaff's appeal from this initial ruling, this court reversed and remanded the case for a new trial. In holding that the judge erred in resolving the key factual question against Bickerstaff on a motion for a directed verdict we stated:

> In this case there is no mystery as to the applicable standard under state law. Mississippi, like nearly all American jurisdictions, holds that a seller or manufacturer has no duty to warn of a danger that is known or obvious to the user . . . . [Citations omitted.] Stating the settled rule does not dispose of the case, however; it is necessary to decide in each case whether the danger involved is known or obvious. A clearer example of a factual issue is hard to imagine.

*Bickerstaff v. South Central Bell Telephone Co.*, 645 F.2d 68 (5th Cir. 1981).

This issue was submitted to the jury at the second trial. From the jury verdict in the second case, Bickerstaff brings this appeal.

*Standard of Care*

■ Bickerstaff raises as her first point of error that the trial court incorrectly instructed the jury on the standard of care owed by the telephone company to the plaintiff in this case. The judge instructed the jury that the defendant "had the duty to exercise reasonable care," and refused the plaintiff's proposed instruction that the telephone company was under the "highest degree of care" to protect the plaintiff

---

1. The case was first brought to trial in March 1980. A directed verdict in favor of the defendant was reversed by the Fifth Circuit in an unpublished opinion of April 30, 1981, and the case was remanded. 645 F.2d 68. A full trial on the merits was held in August 1981. At this second trial, the jury rendered a verdict in favor of the defendant, following which the present appeal was taken.

against injury resulting from electricity, which included the alleged duty to warn.

Bickerstaff argues that under the established standard of care in Mississippi, companies using and handling electrical power owe the public the highest degree of care. *Mississippi Power and Light Co. v. Shepard*, 285 So.2d 725, 729–30 (Miss.1973); *Cumberland Telephone and Telegraph Company v. Cosnahan*, 105 Miss. 615, 62 So. 824, 826 (Miss.1913). The plaintiff bases her argument principally on these two cases.

In *Cosnahan* the plaintiff's decedent, a telephone repairman, had been killed while attempting to untangle a fallen telephone wire, which had become heavily charged with electricity. The telephone company was found negligent in both the stringing of its telephone wires and in its failure to warn and instruct of the danger that would arise when its telephone lines fell ("they would necessarily come into contact with the [highly charged, uninsulated] electric light wires," and that would not be known or obvious to an inexperienced employee). *Id.* 62 So. at 826.

In *Shepard* the plaintiff's decedent was electrocuted when the television antenna he was erecting came in contact with an uninsulated electric power line. The court discussed the high degree of care owed by the power company in that situation and ruled that the company's duty to insulate or guard its lines and issue a warning were questions of fact for the jury. *Id.*, 285 So.2d at 739.

In the present case the plaintiff does not urge that her telephone equipment was defective or that the company failed to provide her with any available protective device. Additionally, it was stipulated that even with a properly designed, maintained and installed telephone system, it is possible for lightning to enter one's residence through some portion of the telephone system. Mrs. Bickerstaff solely relies upon the company's negligent failure to warn of this possibility.

■■■ The plaintiff correctly urges that, under Mississippi law the highest degree of care is owed to the public with regard to construction, installation, and maintenance of electrical lines. *Gordy v. City of Canton, Miss.*, 543 F.2d 558, 561 (5th Cir. 1976). Nevertheless, we do not accept the plaintiff's argument that this same standard of care must apply in every situation involving telephone equipment in which the plaintiff receives an injury.[2] Several authorities have noted, and we repeat, that the degree of care increases as the danger increases, *Gordy v. City of Canton, Miss., supra*, 543 F.2d at 561; *Mississippi Power & Light Co. v. Shepard, supra*, 285 So.2d at 729–730, 737–38. " '[I]n determining the degree of care to be exercised, it is proper for the jury to take into consideration [various factors enumerated indicating the likelihood of harm or the degree of danger to which one confronting the electric-line hazard is exposed].' " *Shepard, supra*, 285 So.2d at 737. The testimony presented to the jury showed that the risk of this particular accident, while known to the defendant, was minimal. We are unable to hold that, under the present circumstances the district court erred in rejecting the instruction that the telephone company owed a duty of the "highest degree of care" with regard to warning the plaintiff of the minimal risk involved in using a telephone during a thunderstorm.

On the previous appeal, we noted that "a seller or manufacturer has no duty to warn of a danger that is known or obvious to the user." *Bickerstaff v. South Central Bell Telephone Company, supra*, 645 F.2d 68 (5th Cir. 1981); *Ward v. Hobart Manufacturing Company*, 450 F.2d 1176, 1188 (5th Cir. 1971); *Harrist v. Spencer-Harris Tool Co.*, 244 Miss. 84, 140 So.2d 558, 562 (1962). On

2. The defendant argues that Mississippi has applied a lower standard of care to telephone companies. *Burch v. Southern Bell Telephone & Telegraph Co.*, 178 Miss. 407, 173 So. 300, 302 (Miss.1937). *Burch*, however, did not involve an electrical injury. The issue there in-volved the placement of a telephone wire across a driveway and the injury resulting to a workman riding atop a loaded truck who was caught by the wire and thrown from the truck. We do not find the decision dispositive of the present issue.

the present retrial, therefore, the trial court, instructed the jury that the telephone company had no duty to warn of the likelihood of danger to one using the telephone during a thunderstorm if this likelihood were common knowledge, but that the jury was to decide whether there was such common knowledge. Additionally, the judge instructed the jury that, even if it found that the telephone company was under a "duty to warn of the danger of using a telephone during a thunderstorm," it must also find that the defendant's admitted failure to give such a warning was a proximate cause of the plaintiff's injury. (Here, the plaintiff answered a ringing telephone during a thunderstorm; the jury may reasonably have concluded that a normally curious subscriber would have picked up the telephone and answered the call, even if aware of the minimal risk involved and regardless of whether the telephone company had furnished or printed a warning of the minimal hazard involved.)

On the basis of Mississippi jurisprudence regarding the duty to warn and in the light of the entire jury instructions, we do not find that the trial court gave erroneous jury instructions regarding the standard of care to be applied to the telephone company under the present factual situation.

*Exclusion of the "Bell Notes"*

In July 1981 (after the Fifth Circuit ruling in the first appeal and before the second trial in August 1981), the telephone company printed in its monthly "Bell Notes", which is distributed to all telephone subscribers, the following warning.

> There is a slight risk of an electrical shock from lightning if you use a telephone during an electrical storm. While our equipment is designed to limit abnormal electrical surges, it is impossible to stop all of them. If you must make a call, keep it brief.

At the second trial Mrs. Bickerstaff listed the "Bell Notes" on her amended pretrial order. The defendant filed a *motion in limine* to exclude the proposed exhibit as being inadmissible proof of subsequent remedial measures, Fed.R.Evid. 407. The trial court sustained this motion before trial, subject to subsequent testimony which would allow the admission of the "Bell Notes" under one of the exceptions to Rule 407—to prove "ownership, control, feasibility of precautionary measures, if controverted, or *impeachment.*" [3] (Emphasis ours.)

The plaintiff agrees that the evidence should be excluded on the issue of negligence, but argues that the "Bell Notes" were admissible (under the exception to Rule 407) to impeach the testimony of witness Sessler, a supervisor and consultant with the telephone company called as an adverse witness by the plaintiff, and also the testimony of witness Fitzgerald, an electrical engineering professor called by the defendant.

Sessler testified that in his opinion that, while such a warning was feasible, it was not advisable or appropriate where the risks were minimal. He subsequently explained that in his opinion a "warning" was a strong statement that implied an impending danger, requiring a drastic change in behavior. In each instance, the plaintiff's counsel then moved that in his cross-examination of this witness he be permitted to question him as to the subsequent "warning" given by Bell to its subscribers—*i.e.,* why, if (as the witness testified) it was unwise and irresponsible to "blow up" the risk by affording a warning, did Bell subsequently do so? See R.3, pp. 118–119, 122–23. The district court denied these bench motions, without explanation why the exception of "impeachment" did not apply.

---

3. Fed.R.Evid. 407 provides:

    Rule 407. *Subsequent remedial measures.* When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, *evidence of the subsequent measures is not admissible to prove negligence or culpable conduct* in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or *impeachment.* (Emphasis added.)

Professor Fitzgerald testified that in his experience working with electrical matters he had never talked to anyone who did not know (1) lightning was dangerous, (2) that it could be conducted on wires that come into a house, or (3) that a telephone set was connected with wires. In the cross-examination of this expert, once again counsel for the plaintiff wanted to use the post-accident "warning" by way of impeachment: "If Mr. Fitzgerald says that he's never even heard of anyone who did not know that this is dangerous, then I want to ask him, wonder why South Central Bell started warning everybody beginning in July of 1981?" R.4 at pp. 213–14. The district court again denied the motion.

Rule 407 (quoted at note 3) specifically provides that its prohibition of evidence of subsequent remedial measures "to prove negligence or culpable conduct" does not require the exclusion of such evidence "when offered for another purpose, such as . . . impeachment."

The leading authorities on the federal evidence rules have pointed out the difficulties with regard to the "impeachment" exception. Professor Wright has pointed out that, in connection with the other rules, the impeachment "exception" may swallow up the "rule" insofar as utilized on cross-examination of an adverse witness[4] unless strained limitations upon otherwise permissible impeachment testimony are adopted, 23 Wright and Graham, Federal Practice and Procedure, § 5289 at pp. 146–47 (1980). Judge Weinstein reaches a similar conclusion, 2 Weinstein's Evidence, ¶¶ 407[02] at pp. 407–10 & 11, 407[05] (1981), although he points out that such cross-examination may properly be restricted when its thrust is not to reflect on the witness's testimony but rather to show that the defendant was negligent, Id., § 407[05] at p. 407–25. Without extended discussion, Professor Moore merely notes that the trial judge should guard against the improper admission of such evidence "to prove prior negligence under the guise of impeachment." 10 Moore's Federal Practice, § 407.04 at p. IV–159 (2d ed. 1981). Another commentator rather plainly indicates that, where a party opens up the issue by claiming that all reasonable care was exercised at the time, the party's subsequent conduct by way of alleviation of the hazard is then proper impeachment testimony under the Rule 407 exception. Saltzburg and Redden, Federal Rules of Evidence Manual 181, 183 (3d ed. 1982).

Under these authorities' preponderant view of the impeachment exception, possibly unwise but nevertheless provided by Rule 407, the district court should probably have allowed these experts to be impeached by the telephone company's subsequent conduct that tended to contradict their opinions. Particularly in the case of the defend-

4. See 23 Wright and Graham, Federal Practice and Procedure, § 5289 at pp. 145–146:

In ignoring requests to delete "impeachment" from Rule 407 the Advisory Committee provided a good illustration of what can happen when one common law rule is maintained without attention to the facts that a number of closely related rules have been altered. For example, it is doubtful that the plaintiff, at common law, could have called the defendant to the stand, asked him if he thought he had been negligent, and impeached him with evidence of subsequent repairs if he answered "no." But after the Advisory Committee provided that a party can impeach his own witness, that a witness can express an opinion on the ultimate issue, and that prior inconsistent statements can be used as substantive evidence, it is difficult to see what is to prevent this. Although some commentators have expressed the hope that trial judges will not permit the rule to be used in this fashion, they have not given much useful advice on how this is to be done.

It is possible that the Advisory Committee intended that the impeachment exception should be used to undermine Rule 407, though this seems unlikely. If not, they have given the trial judge very little power to prevent this result. Negligence or culpability is usually an ultimate issue in the case so that questions going to that issue are clearly relevant. If the defendant or his witnesses are competent to testify on that issue, it is difficult to see how the probative worth of their testimony could be so low as to be excluded under Rule 403. And if the witness testifies that in his opinion there was no negligence, the relevance as impeachment of repairs that he has undertaken or supervised seems clear in view of the "impeachment" exception in Rule 407; therefore, exclusion under Rule 403 seems difficult to justify.

ant's own consultant Sessler, why—if indeed as he testified it would be irresponsible to warn customers of this insignificant risk—did the telephone company in fact later provide such warnings? The three decisions cited by the commentators all allowed impeachment, although perhaps despite occasional broad language their holdings could be distinguished with regard to application to the present facts.[5] See also Annot., Subsequent Remedial Measures, 50 ALR Fed. 935 (1980).

Since we have concluded that under the present circumstances, even if error was committed it was harmless, we will assume, without squarely deciding this close issue, that impeachment of these experts should have been allowed, as moved for.[6] However, an error in the exclusion of evidence is not grounds for reversal unless substantial rights are affected or unless the affirmance is inconsistent with substantial justice. Fed.R.Civ.P. 61; 28 U.S.C. § 2111. Our examination of the record in this regard convinces us that the jury verdict was not affected by the denial of the slight impeachment of these experts by the telephone company's subsequent conduct inconsistent with their opinions.

The substantial issues of the appeal concerned whether the telephone company was required "in the highest degree of care" to afford these warnings, or whether instead under the "ordinary care" standard no such duty was imposed on it; and whether, if the company was under such a duty, its failure to afford the warning was a proximate cause of the injuries. On these issues, the evidence supports the instructions given and the verdict of the jury.

True, the plaintiff argued that even in "ordinary care" such a warning was required, in spite of the concededly minimal risk—and testimony of the defendant's experts was offered for and impeachable with regard to this issue also: Sessler, that affording such a warning would be irresponsible and counter-productive; Fitzgerald, that no such warning was required because the minimal danger was obvious to every telephone user. But the "warning" by which their testimony was sought to be impeached—the "slight risk of an electrical shock" in the use of a telephone during an electrical storm, and the instruction that "[i]f you must make a call, keep it brief"—, included within a monthly brochure perfunctorily sent one month to telephone subscribers, was not so substantially contradictory of their opinions as to cast more impeaching doubt upon them than was already furnished to the jury through their own contradictory testimony and the virtually undisputed factual background (mini-

---

5. *In Dollar v. Long Mfg. N. C. Inc.*, 561 F.2d 613, 618–19 (5th Cir. 1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978), this court reversed; the plaintiff had been refused an opportunity to impeach the defendant's expert, who testified that operation with a non-fixed backhoe was safe, by a post-accident warning bulletin issued by the defendant to the contrary. There, however, the warning bulletin was authored by the expert witness himself; the decision is arguably distinguishable and not controlling.

   Likewise, in *Patrick v. South Central Bell Tel. Co.*, 641 F.2d 1192, 1196–98 (6th Cir. 1980), evidence of subsequent repairs was admitted on cross-examination by way of impeachment of a witness. However, the decision is arguably distinguishable from the present as involving an issue more nearly bearing on his veracity than on the weight to be given to his opinion.

   Also, in *Kenny v. Southeastern Pennsylvania Transportation Authority*, 581 F.2d 351, 355–56 (3d Cir.), *cert. denied*, 439 U.S. 1073, 99 S.Ct.

845, 59 L.Ed.2d 39 (1978), impeachment of a defense witness under cross-examination was permitted as to installation of new lighting after the accident. However, arguably the cross-examination on the issue tended to cast doubt upon the factual accuracy of the witness's testimony on direct as to pre-accident conditions or inspection.

6. The district court ruled that the impeachment evidence was inadmissible under Rule 407. It did not base its ruling upon its discretionary power to exclude relevant evidence where its probative value is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403. We do not reach nor consider the issue of whether, if the post-accident "warning" *was* admissible impeachment evidence, the district court would have abused his discretion, if any, to exclude the evidence as under the circumstances tending to prove negligence, in contravention of Rule 407, in the guise of impeachment.

mal risk, known to some but not necessarily all subscribers) upon which their testimony rested.

*Conclusion*

For the reasons stated above, we find no reversible merit in either point of error raised by the plaintiff. We therefore AFFIRM the judgment in favor of the defendant.

AFFIRMED.