**PETREE, David and Petree, Diane L., his wife**

v.

**VICTOR FLUID POWER, INC.**

**Appeal of David PETREE and Diane L. Petree, Appellants.**

No. 89–1003.

United States Court of Appeals, Third Circuit.

Argued July 11, 1989.

Decided Oct. 6, 1989.

Rehearing and Rehearing In Banc Denied Nov. 7, 1989.

Richard J. Jurewicz, Joseph Lurie (argued), Galfand, Berger, Lurie & March, Philadelphia, Pa., for appellants.

Francis F. Quinn (argued), George J. Lavin, Jr. Associates, Philadelphia, Pa., for appellee.

Before HIGGINBOTHAM, BECKER and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

In this appeal, we review a district court's refusal to allow evidence of a warning decal to be used for impeachment, under the impeachment exception to Fed.R. Evid. 407, on grounds that such evidence was inadmissible under Fed.R.Evid. 403. Upon our review of the record and relevant case law, we conclude that the district court committed error and vacate the judgment of the district court.

### I.

The facts of this case are well summarized in our previous opinion, *Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191 (3d Cir.1987) (*"Victor Fluid I"*). To the extent that it is necessary for a complete understanding of the present appeal, we review those facts.

David Petree ("Petree") brought this

Pennsylvania diversity action[1] to recover for injuries he sustained on April 20, 1983 while working at Empire Steel Castings, Inc. ("Empire Steel"), his place of employment, when he was struck in the side of the face by a steel spacer bar that was ejected from a hydraulic press being operated by a fellow employee. The press had been manufactured and sold to Petree's employer in 1959 by Rodgers Hydraulic, Inc., the predecessor corporation to the defendant Victor Fluid Power, Inc. ("Victor Fluid").

Petree filed an action for damages in district court, pleading both strict liability and negligence. In particular, Petree claimed that the offending machine had been defectively designed, and that there had been a failure to warn of dangers inherent in the use of the product. Victor Fluid claimed in defense that the machine was not unreasonably dangerous when it left the manufacturer's possession, and that the accident had been caused by substantial changes in the press and by improper care that could not have been foreseen by the manufacturer.

Although Petree had abandoned his theory of negligence at pretrial conference, immediately prior to trial he moved to amend the pretrial order to include a theory of negligent failure to warn, and to admit into evidence a decal warning of projectile hazard that Victor Fluid had begun placing on all new hydraulic presses in 1980.[2] The district court denied the motion to amend

the pretrial order, holding that Petree's negligence theory, which was based on a manufacturer's continuing duty to warn of hazards discovered after the product is sold, had no support in Pennsylvania law. The district court also denied admission of the warning decal on grounds that it was irrelevant under § 402A of the Restatement (Second) of Torts,[3] and even if relevant, Rule 407 of the Federal Rules of Evidence would apply to exclude the decal.

The matter proceeded to a jury trial and, at the close of Petree's case, Victor Fluid moved for a directed verdict on Petree's strict products liability claims. The district court granted the motion with respect to the issue of failure to warn, and, accordingly, did not submit that issue to the jury. Subsequently, the jury returned a verdict in Victor Fluid's favor on the defective design issue. Judgment for Victor Fluid was entered in accordance with the jury's verdict, and Petree appealed.

On appeal, we determined that there was sufficient evidence to go to the jury on question of failure to warn, and thus vacated the district court's grant of a directed verdict to Victor Fluid and remanded for a new trial on this issue.[4] We also addressed Petree's contention that the 1980 warning decal was admissible because it showed that Victor Fluid was aware of the projectile hazard *before* the time of Petree's injury in 1983, and that Rule 407 did not apply since it only excluded evidence of remedial

---

1. Petree's wife, Diana L. Petree, also joined in this action, claiming loss of consortium.

2. The decal that Victor Fluid began affixing in 1980 to all its newly manufactured hydraulic presses

> warned against operation of the machine by anyone unfamiliar with the operation and safety instructions provided in the owners manual. It also warned of an ejection hazard from improper installation or alignment of work pieces, ram extensions, spacers or adapters, or from the use of pressure exceeding the structural strength of the selected tooling members. The decal also represented graphically that an operator or bystander might be injured by an expelled part.

> *Victor Fluid I,* 831 F.2d at 1197.

3. Section 402A of the Restatement (Second) of Torts, which has been adopted by the Pennsylvania courts, imposes strict liability on the sell-

er of any product in a defective condition unreasonably dangerous to the user or consumer. *Overpeck v. Chicago Pneumatic Tool Co.,* 823 F.2d 751, 753–54 (3d Cir.1987).

4. In our ruling on this issue, we noted:

> Under § 402A [of the Restatement (Second) of Torts], even if properly designed, a product may be found to be defective and unreasonably dangerous if its manufacturer fails to warn the user or consumer of latent dangers in the product's use or operation.... There is no question that, under Pennsylvania law, a manufacturer may be liable for failure to warn even when a product is perfectly designed and manufactured. *Sherk v. Daisy-Heddon,* 498 Pa. 594, 450 A.2d 615 (1982).

> *Victor Fluid I,* 831 F.2d at 1194 (citation omitted).

measures taken *after* an injury occurs.[5] Petree further contended that the decal was admissible to impeach the testimony of Victor Fluid's expert witness, William Eaton ("Eaton"), who allegedly denied the feasibility of precautionary measures.

We noted that the application of Rule 407 to strict products liability actions based on § 402A of the Restatement had been reaffirmed in *Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir.1982).[6] In that case, evidence of a warning sticker placed on a printing press, subsequent to plaintiff's injury, was ruled inadmissible under Rule 407. However, *Josephs* had not addressed the question—before us in *Victor Fluid I*—of the relevance or admissibility, in a strict products liability action, of subsequent remedial measures taken after the date of sale but prior to the date of injury.

In affirming the district court's denial of Petree's motion to admit the warning decal into evidence, we held that the decal, while relevant, was inadmissible under Rule 407 "where the manufacturer's liability is predicated on a theory of failure to warn of danger from improper use of the product by the customer." 831 F.2d at 1198. We reasoned that

[t]he danger from a particular use by the customer must be foreseeable at the time of sale [in order to invoke products liability]. Consequently[,] the policies supporting Rule 407 counsel exclusion of proof of subsequent remedial measures when offered in strict liability cases as an admission that the product was defective at the time of sale.

*Id.* Yet, we did not rule out Petree's claim that the warning decal was admissible to impeach Eaton's testimony. We noted that "evidence of remedial measures which is inadmissible for one purpose under Rule 407 would still be available if offered for the purpose of impeachment." *Id.* We declined to discuss the matter further, however, since the issue of impeachment was moot in light of our decision to remand the case for a new trial on the question of failure to warn.

Upon remand, as in the first trial, Victor Fluid called Eaton, a professional engineer, as an expert witness to testify. Eaton opined that the danger of metal spacers being ejected from the hydraulic press while in operation had been designed out of the equipment as it was sold in 1959. He testified that Empire Steel had added the risk of projectile hazard back into the press when it permanently set the bolster table of the press in its lowest position—thereby creating the need for use of large metal spacers—and operated the press with a bent ram dripping hydraulic fluid. Eaton further opined that Empire Steel's alterations of the press were not a reasonably foreseeable use when the press was sold by the manufacturer in 1959.

Petree's counsel, upon cross-examination, sought to impeach Eaton's testimony with evidence of the warning decal. The district court once again denied the admission of the decal on grounds that such evidence, while admissible under the impeachment exception to Rule 407,[7] was barred under Rule 403 of the Federal Rules of Evidence since its probative value was outweighed by its potential for confusing the issues, misleading the jury and unfairly preju-

**5.** Fed.R.Evid. 407 provides:
When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent [remedial] measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

**6.** This Court had first recognized the application of Rule 407 to actions involving strict products

liability under 402A of the Restatement in *Knight v. Otis Elevator Co.*, 596 F.2d 84, 91–92 (3d Cir.1979). *See also Bauman v. Volkswagenwerk Aktiengesellschaft*, 621 F.2d 230, 232–33 (6th Cir.1980).

**7.** The district court also called into question whether Petree had established an adequate foundation for the admission of the decal evidence for purposes of impeachment. However, the court rested it decision to exclude the evidence on Rule 403, and that is the issue before us on appeal.

dicing Victor Fluid's defense.[8] Thereafter, the jury returned a verdict in favor of Victor Fluid on the failure to warn issue. Judgment was entered on November 28, 1988 in accordance with the verdict, and this appeal followed.

Petree appeals on grounds that the district court committed reversible error in not permitting evidence of the 1980 warning decal to be used to impeach Eaton's testimony. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 (1982). In this opinion we shall first survey the use of the impeachment exception to Rule 407 and then discuss its relevance to the merits of this case.

## II.

Rule 407 (quoted at note 5) specifically provides that its proscription on a party's use of evidence of subsequent remedial measures "to prove negligence or culpable conduct" does not require the exclusion of such evidence "when offered for another purpose, such as ... *impeachment.*" Fed. R.Evid. 407 (emphasis added).

We recognized the impeachment exception to Rule 407 in *Kenny v. Southeastern Pennsylvania Transp. Auth.*, 581 F.2d 351 (3d Cir.), *cert. denied*, 439 U.S. 1073, 99 S.Ct. 845, 59 L.Ed.2d 39 (1978). In that case, we held that the trial judge did not err in admitting, for purposes of impeachment, evidence of the installation of a new lighting fixture four days after a rape had occurred in a train station of the Philadelphia transit system. An employee of the transit system had testified that the lighting at the stations was inspected on a daily basis, and that blown light bulbs were replaced. In upholding the admission of evidence of the new lighting fixture to impeach that testimony, we held that "when the defendant opens up the issue by claiming that all reasonable care was being exercised at the time [of the incident], then the plaintiff may attack that contention by showing later repairs which are inconsist-

ent with it." 581 F.2d at 356 (citation omitted).

Other courts of appeals have also recognized that Rule 407 permits evidence of subsequent remedial measures to be used for impeachment purposes. *See Muzyka v. Remington Arms Co., Inc.*, 774 F.2d 1309, 1313–14 (5th Cir.1985)(where defendant's experts opined that rifle in question was best and safest rifle on market, trial judge erred in not permitting plaintiff to proffer evidence of subsequent design change for impeachment); *Public Service Co. v. Bath Iron Works Corp.*, 773 F.2d 783, 791–93 (7th Cir.1985)(in action against manufacturer arising from failure of product to perform properly its intended use, trial court improperly excluded evidence of design plans, prepared subsequent to said failure, that were proffered to impeach witnesses' testimony that former design plans were adequate); *Anderson v. Malloy*, 700 F.2d 1208, 1212–14 (8th Cir.1983)(district court committed prejudicial error in excluding evidence of subsequent installation of safety chains and "peep holes" to impeach defendants' testimony that they had done everything possible for a secure motel); *Bickerstaff v. South Central Bell Telephone Co.*, 676 F.2d 163, 167–69 (5th Cir.1982)(trial court committed error, although harmless error, in not allowing testimony of consultant for defendant telephone company, called as adverse witness by plaintiff, and company's engineering expert to be impeached by subsequent warning given by company to its subscribers); *Patrick v. South Central Bell Tel. Co.*, 641 F.2d 1192, 1195–97 (6th Cir.1980)(trial court properly admitted evidence of subsequent remedial repairs to impeach the testimony of defendant's expert witnesses that cables in question met statutory minimum height at time of accident); *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir.1977)(reversible error for trial judge not to have allowed plaintiffs to impeach defendant's design engineer in products liability case

---

**8.** Fed.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

by asking him about a letter he sent to dealers warning them of "death dealing propensities" of product when used in fashion employed in that case), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978).

However, many of these same courts have recognized that Rule 407's impeachment exception must not be used as subterfuge to prove negligence or culpability of the defendant. *See Hardy v. Chemetron Corp.,* 870 F.2d 1007, 1010–12 (5th Cir. 1989)(trial court properly excluded evidence of subsequent rewiring proffered to impeach defendant's testimony that negligent wiring had not caused plaintiff's injury); *Probus v. K–Mart, Inc.,* 794 F.2d 1207, 1209 (7th Cir.1986)(where plaintiff's expert testified that plaintiff's fall was caused by a defective end cap on the ladder, which defendant manufacturers' expert then denied, trial court did not err in excluding evidence proffered for purposes of impeachment that defendants had changed the material used in making the end caps; it was insufficient that evidence of the subsequent remedial measure would impeach defendants' testimony since, if that were the sole requirement, the exception would be elevated to the rule); *Public Service Co. of Indiana v. Bath Iron Works Corp.,* 773 F.2d at 792 ("[impeachment] exception must be applied with care, since 'any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach [a party's] testimony that he was using due care at the time of the accident' ")(quoting *Flaminio v. Honda Motor Co.,* 733 F.2d 463, 468 (7th Cir. 1984)); *Bickerstaff v. South Central Bell Tel Co.,* 676 F.2d at 168 & 169 n. 6 (court discussed danger that the impeachment exception could swallow the rule insofar as it is utilized in cross-examination of adverse witnesses; court did not reach issue of whether trial judge would have abused his discretion if he had excluded the evidence, as tending to prove negligence, under the guise of impeachment).

The leading commentators on the Federal Rules of Evidence have noted this tension associated with applying the impeachment exception to Rule 407. Professor Wright voices a strong concern that the "exception" has the capacity to engulf the "rule." As an illustrative example, Wright explains that "it is doubtful that the plaintiff, at common law, could have called the defendant to the stand, asked him if he thought he had been negligent, and impeached him with evidence of subsequent repairs if he answered 'no.'" 23 Wright & Graham, *Federal Practice and Procedure* § 5289, at 145 (1980) (footnote omitted). Similarly, Professor Moore warns that "the trial judge should guard against the improper admission of evidence of subsequent remedial measures to prove prior negligence under the guise of impeachment." 10 Moore, *Moore's Federal Practice* § 407.04, at IV–159 (2d ed. 1988). Judge Weinstein also admonishes that "[c]are should be taken that needless inquiry and concern over credibility does not result in unnecessarily undercutting the policy objective of the basic exclusionary rule." 2 Weinstein & Berger, *Weinstein's Evidence* ¶ 407[05], at 407–33 (1988).

To guard against the impeachment exception being used as a loophole for bringing in evidence to prove negligence under Rule 407, the commentators advise that trial judges not abandon their discretionary authority to exclude the use of such evidence. Wright notes that "the probative worth of the [impeachment] evidence ... may vary and with it the power of the trial judge to exclude it under Rule 403." 23 Wright & Graham, *supra,* at 148. Professor Moore suggests that

> the trial judge has broad power to insure that remedial measures evidence is not improperly admitted under the guise of the [impeachment] exception.... [I]f the trial judge concludes that factors of undue prejudice, confusion of the issues, misleading the jury or waste of time outweigh the probative value of the evidence, he may exclude the evidence under Rule 403.

10 Moore, *supra,* § 407.02, at IV–153 (footnotes omitted). Judge Weinstein also recommends that "[b]efore permitting the use of such evidence for impeachment, the trial court should ascertain whether the general

standards for admissibility under Rules 401 and 403 are met." 2 Weinstein & Berger, *supra,* at 407–34 (footnote omitted). Moreover, the Advisory Committee's Note to Rule 407 states that, in evaluating the admission of subsequent repairs under the impeachment exception, "the factors of undue prejudice, confusion of issues, misleading the jury, and waste of time remain for consideration under Rule 403." Fed.R. Evid. 407 advisory committee's note.

### III.

### A.

■ The trial court in the case *sub judice* did follow the advice of the commentators and subject the warning decal to Rule 403's balancing test before deciding on whether such evidence was admissible to impeach Eaton's testimony under Rule 407. We must now decide whether the court acted properly in refusing to admit evidence of the decal. We review the district court's exclusion of evidence, pursuant to the balancing of considerations under Rule 403, "with substantial deference." *McQueeney v. Wilmington Trust Co.,* 779 F.2d 916, 922 (3d Cir.1985)(citing *United States v. Lebovitz,* 669 F.2d 894, 901 (3d Cir.), *cert. denied,* 456 U.S. 929, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982)). Despite this highly deferential standard, we find that the district court abused its discretion.

In conducting the Rule 403 balancing test, the district court rested its decision not to admit the decal as impeachment evidence upon two considerations. The court's first basis was its belief that the decal would be unfairly prejudicial since the jury, in finding no design defect in the first trial, had already decided that the press was safe for its intended and reasonably foreseeable use when sold in 1959. The court reasoned:

> I think it's significant that this is the second trial and that at the first trial the jury answered an interrogatory and that interrogatory was as follows, "Do you find by a preponderance of the evidence that the 200 ton shop press was in defective condition, that is unsafe for its intended or reasonably foreseeable use

when it left the possession of Rodgers Hydraulic, Inc. in 1959?" The jury answered that ["]no.["]

Trial Tr. at 22, *reprinted in* Appellants' App. at 248.

We find the court mistaken in its understanding of the impact of the earlier jury verdict with respect to design defect on the issue of failure to warn. We specifically held in *Victor Fluid I* that "the jury was *not* instructed [in the first trial] that it might find a defect in the failure to warn of hazards which could not be eliminated, and in fact was specifically told by the judge that the issue of warnings was not in the case." 831 F.2d at 1196 (emphasis added). Contrary to the district court's reasoning, the decal evidence if admitted to impeach Eaton's testimony, would not have impeached it on a point already decided favorably to the defendant at the first trial, since the issue of failure to warn of danger inherent in the intended and reasonably foreseeable use of the press issue was not addressed in the first trial. Therefore, we find that the district court's exclusion of the warning decal as impeachment evidence on this basis was an abuse of discretion.

The second basis for the trial court's exclusion of the decal under Rule 403 was that Victor Fluid had demonstrated that Petree's employer, Empire Steel, had made substantial changes in the design of the press. The court held that

> I think it's also significant that changes made by Empire Steel ... were made before 1980. And, of course, it's the position of defendant ... that they altered the basic design of the press and Mr. Eaton, defendant's expert, has so testified.

Trial Tr. at 22, *reprinted in* Appellants' App. at 248.

Presumably, the court reasoned that the decal would mislead the jury into thinking that there were inherent dangers in the normal use of the press, when Victor Fluid had shown that any dangers were the result of misuse of the press on the part of Petree's employer. However, with respect to the issue of failure to warn, we noted in *Victor Fluid I* that

even alteration or misuse of the consumer does not provide an absolute defense to a charge of strict liability. Under Pennsylvania law, only *unforeseeable* contributory conduct by the consumer will insulate the manufacturer from strict products liability, and the question of foreseeability is for the jury. *Greiner v. Volkswagenwerk,* 540 F.2d 85, 95 (3d Cir.1976).

There is adequate evidence of record from which the jury could find a latent danger of ejection of metal due to the foreseeable improper set-up or misuse of the press by the purchaser or its employees.

831 F.2d at 1195 (emphasis added).[9] Since the district court did not appreciate that the mere fact that Empire Steel had made changes in the press was not dispositive on the issue of strict products liability, its exclusion of the decal as impeachment evidence on this basis was also an abuse of discretion.

Because of its conclusory reasoning for excluding the warning decal, the district court did not decide the more vexing question of whether the decal could be properly admitted to impeach Eaton's testimony that there was no inherent danger in the use of the press, and that the improper set-up and misuse of the press by Empire Steel were not a reasonably foreseeable use of the product. However, we are compelled to provide some comment, given our discussion of the issue in part II of this opinion.

█ In our view, Victor Fluid's decal warning of projectile hazard was admissible for impeachment purposes. Given Eaton's opinion that the danger of metal spacers being ejected from the press had been designed *out* of the product at the time it was sold to Empire Steel, and that there was no need to warn of projectile hazard as a result, evidence of the decal served directly to contradict Eaton's claim. Moreover, contrary to Victor Fluid's contention

that the decal lacked probative value since it was placed on presses 21 years after the press in question was manufactured, the decal's warning against improper use of the equipment was relevant to the issue of whether Empire Steel's misuse of the press was reasonably foreseeable. While we are cognizant of the danger of unfair prejudice that admission of the warning decal would pose, that problem could have been alleviated by the trial court instructing the jury that the decal was *not* an admission by Victor Fluid that there was a projectile hazard in the use of the press when sold.

We note in this regard that the Advisory Committee's Note to Fed.R.Evid. 403 provides, inter alia, as follows:

In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction. *See* Rule 106 [now 105] and Advisory Committee's Note thereunder....

**B.**

█ Although we have concluded that the district court abused its discretion in excluding evidence of the decal, we must now decide whether the court's error so substantially affected Petree's rights as to amount to reversible error. Fed.R.Civ.P. 61; Fed.R.Evid. 103(a); 28 U.S.C. § 2111 (1982). Our standard of review of a district court's nonconstitutional error in a civil suit requires that we find such error harmless only if it is highly probable that the error did not affect the outcome of the case. *McQueeney v. Wilmington Trust Co.,* 779 F.2d at 917. Upon our review of the record, we find that the trial court's error in this case was not harmless.

Eaton was the star witness for the defense. He repeatedly denied that there was any possible hazard from the press and especially any projectile hazard. App.

**9.** We need not reach the *Walton* continuous duty to warn issue or whether *Walton* would provide a basis for admitting the warning because the plaintiff never raised the issue at trial as a basis for admitting the warning into evidence. *See Walton v. AVCO Corp.,* 383 Pa.Super. 518, 557 A.2d 372 (1989)(even if a danger is unforeseeable at the time of the sale of the product, the seller has a duty to warn if the danger becomes foreseeable after the time of the sale, at least when the product was sold to a specialized group of consumers).

**42**

at 278a–280a, 291a, 293a–321a. Eaton testified that the mechanical operation of the press, specifically the adjustable bolster table, eliminated any possibility of a work piece shooting out from the press, and that under no circumstances could this model press eject a work piece. Eaton testified that there was no need or reason to use spacers or extensions and in essence, denied that a warning would serve any purpose. *See id.* The jury, which found for the defendant, almost surely credited this testimony.

In our view it would be potentially devastating cross-examination had the plaintiff been able to confront Eaton with Victor Fluid Power's pre-injury warning, which totally contradicted his testimony. Eaton would have had to explain the contradiction between his opinion and that of his client. The district court's ruling in effect permitted Eaton to deny every hazard contained in his client's pre-injury warning without being cross-examined or impeached by it. Had the impeachment been permitted the jury may very well have discredited Eaton and rejected his testimony.

Our view is supported by the decision of the Fifth Circuit in a similar case, *Dollar v. Long Manufacturing, N.C., Inc.,* 561 F.2d 613, 618 (5th Cir.1977). The court found reversible error in the trial court's refusal to allow the defendant's expert to be impeached with a warning.

One will almost always be able to produce expert testimony to contradict an opponent's contrary expert testimony. But that is no surrogate for impeachment of the opponent's sole expert witness. It is too well settled even to require citation that the law permits wide latitude in cross-examination of expert witnesses, including impeachment. To find an error harmless just because a party can introduce evidence to mitigate it would be to trivialize the doctrine of harmless error.[10]

10. Appellees contend that the district court erred in denying its motion for directed verdict and summary judgment. Examining the remand in a light most favorable to appellant, we

IV.

For the foregoing reasons, the judgment of the district court entered on November 28, 1988, will be vacated and the matter remanded for a new trial.

find that there was evidence from which a jury might reasonably afford relief. The district court properly denied the motions.