McKEE, Circuit Judge,
dissenting in part and concurring in part.
I must respectfully dissent from part II.F. of the majority opinion. Although I concur with the rest of the majority’s analysis, I believe that the district court erred in excluding the Kreutzer memorandum under Rule 407 of the Federal Rules of Evidence. Moreover, I do not believe that this error was harmless, and I would therefore remand for further proceedings.
The condition of the rope or “leaving line” was crucial to the determination of Consolidation Coal’s liability. Those lines are used to tie barges together and can, in good condition, withstand a force of over 18,000 pounds.
*138 The district court concluded that the leaving line Newman was holding when he fell had been cut. Clearly, if that line was cut after plaintiff fell, as the district court concluded, Consolidation Coal would not be liable. However, if before the fall, the line had been cut or was in defective condition, Consolidation may well be liable. See Earles v. Union Barge Line Corp., 486 F.2d 1097, 1104 (3d Cir.1973) (A shipowner has a duty “to furnish a reasonably safe place for ... one working aboard the barge to perform his chores ... [The breach of that duty] results in liability for negligence when the breach proximately causes injury to a foreseeable person.”). “[A] shipowner’s duty to furnish a seaworthy ship is absolute and completely independent of his duty ... to exercise reasonable care....” Id. at 1105 (internal quotations omitted); see also Edynak v. Atlantic Shipping, Inc., 562 F.2d 215, 222 (3d Cir.1977).
Louie Truntich, the assistant foreman at the time of the accident, testified that he saw the leaving line on the day of the accident after Newman’s fall, and it appeared to have been “cut with an axe.... It was just a nice, smooth, straight cut.” App. at 1271a. Newman sought to discredit this testimony by introducing a memo circulated five days after his accident by David Kreutzer, the top company official on the scene the day of the accident. That memorandum stated in part:
Our investigation showed that the line had suffered prior damage and although it was the normal 1-1/2 [inch] MPO leaving line typically used for this purpose, a close inspection should have pointed out the
App. at 1279a (emphasis added).[1] The district court excluded this evidence under Rule 407 of the Federal Rules of Evidence as a subsequent remedial measure presumably because the memo goes on to announce that, in the future, “careful examination of the rigging and lines shall be made prior to their use in any operation.” App. at 1279a. Rule 407 states:
When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence.... This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as ... impeachment.
Fed.R.Evid. 407. Certainly, if Newman sought to admit the memo’s language about examining the lines, then Rule 407 would be implicated. The record clearly reflects, however, that Newman only sought to admit that portion related to the company’s investigation into his accident.[2] I do not believe that this proffered evidence was within the scope of Rule 407. Therefore, I would remand this case to the district court for a determination of whether that evidence could have been excluded on other grounds or whether it should have been admitted.
Even if the memo’s statement about the company’s investigation into Newman’s accident is a subsequent remedial measure,[3] the *139 district court should have determined whether it was nevertheless admissible under Rule 407 as impeachment evidence.[4] If, as the memo suggests, the condition of the rope was such that “a close inspection ” would have disclosed that the line should not have been used, the district court could have rejected Truntich’s testimony that the rope appeared to have been “cut with an axe” and concluded that it was not “just a nice, smooth, straight cut” as Truntich testified. At the very least, the memorandum would have corroborated the testimony of Thomas Brown, the foreman at the repair facility. Brown testified that the rope did not look freshly cut.
The majority suggests that the memorandum did not directly contradict Truntieh’s testimony and cites Harrison v. Sears, Roebuck & Co., 981 F.2d 25, 31 (1st Cir.1992), in support of its statement that “Truntich only was offering his opinion of the appearance of the line immediately following the accident. ... [Tjhere must be ‘a greater nexus between the statement sought to be impeached and the remedial measure than the ease at bar.’ ” Majority Op. at 16. However, the appearance of the rope immediately following the fall was crucial evidence. Indeed, I can think of no other basis for the district court’s conclusion that the rope had been cut after the fall than how the rope appeared immediately afterwards.
In Kenny v. Southeastern Pennsylvania Transportation Authority, 581 F.2d 351 (3d Cir.1978), we allowed evidence of new lighting fixtures that were installed on a train platform after an assault there to impeach the testimony of a SEPTA employee that platform lights were inspected daily. In Petree v. Victor Fluid Power, Inc., 887 F.2d 34 (3d Cir.1989), we ruled that the district court committed reversible error in refusing to admit evidence of a warning decal that had been applied years after plaintiffs injury when that evidence was offered to impeach testimony that a mechanical press had no inherent dangers. I believe Kreutzer’s memo could have been admitted for similar purposes.
Moreover, it is important to bear in mind that the exoneration/limitation proceeding was a bench trial so the court’s usual concern that the jury will misuse the impeachment evidence is absent. Accordingly, the majority is far more concerned about the dangers of admitting evidence of a “remedial action” than is warranted by the circumstances of this case. See majority op, at 136 (quoting Flaminio v. Honda Motor Co., 733 F.2d 463, 468 (7th Cir.1984)(suggesting that “any evidence of subsequent remedial measures might be thought to ... impeach”)).
“The reason for the exclusion [of remedial measures after an accident] is to encourage post-accident repairs or safety precautions in the interest of public safety.” Kenny, 581 F.2d at 351. That public policy is not furthered by excluding the language in Kreut-zer’s memo that simply described the condition of the rope and stated that the leaving line “had suffered prior damage.” App. at 1279a.
Although the district court could have rejected this evidence and accepted Truntich’s testimony, I believe that testimony was so crucial that Newman is entitled to have the district court reconsider the admissibility of this evidence. If the court determines that there is no other obstacle to receiving that memo into evidence, then the court should *140 reexamine the question of Consolidation’s liability in light of this additional evidence. Accordingly, I respectfully dissent from section II.F. of the majority opinion.

. Although the memo does not specifically mention Newman’s name, it is clear from its content and date that it is referring to his fail.

. Arguably, the last few lines of the above excerpt suggest remedial action that would fall within the scope of Rule 407: "[A] close inspection should have pointed out the damage and the line should have been taken out of service.” App. at 1279a (emphasis added). However, that inference is tenuous at best.
The majority suggests that Kreutzer’s memo was unambiguously within the scope of Rule 407 and further contends that "there is authority supporting the exclusion of evidence of post-damage and the line should have been taken out of service. accident investigations under Rule 407.” Majority Op. at 136. In support of its position, the majority cites Specht v. Jensen, 863 F.2d 700, 701-02 (10th Cir.1988) and Alimenta v. Stauffer, 598 F.Supp. 934, 940 (N.D.Ga.1984). Both cases involved an attempt by one party to admit a document specifically for the subsequent remedial measures it contained. As I explained above, that is not the case here; Newman clearly only wanted to admit the findings from Consolidation’s investigation, namely, "that the line had suffered prior damage,” not the company’s response thereto.
This distinction is explained in the Tenth Circuit’s opinion in Rocky Mountain Helicopters v. Bell Helicopters, 805 F.2d 907 (10th Cir.1986), cited in Specht, 863 F.2d at 702.
It would strain the spirit of the remedial measure prohibition in Rule 407 to extend its *139 shield to evidence contained in post-event tests or reports. It might be possible in rare situations to characterize such reports as "measures” which, if conducted previously, would reduce the likelihood of the occurrence. Yet it is usually sounder to recognize that such tests are conducted for the purpose of investigating the occurrence to discover what might have gone wrong or right. Remedial measures are those actions taken to remedy any flaws or failures indicated by the test. In this case, the remedial measure was not the Photoelastic Study of the trunnion but rather the subsequent redesign of the trunnion.
Rocky Mountain, 805 F.2d at 918. In Rocky Mountain, all references to the redesign were excluded at trial, see id., which is what I suggest could have been done with respect to the Kreut-zer memo's references to Consolidation's post-accident implementation of an inspection policy.

. If Truntich was an agent of the company, then his statement about the rope's condition could be impeached by the statement in the company memo. I take no position as to whether the record supports the conclusion that Truntich was testifying as an agent of Consolidation Coal, however.